# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MATTHEW D. JONES,
            *Defendant-Appellant.*

No. 06-30024

D.C. No.
CR-04-00543-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
December 6, 2006—Seattle, Washington

Filed January 10, 2007

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge B. Fletcher

*The Honorable William W Schwarzer, Senior District Court Judge for
the Northern District of California, sitting by designation.

227

**COUNSEL**

Sheryl Gordon McCloud, Law Office of Sheryl Gordon McCloud, Seattle, Washington, for the defendant-appellant.

Katheryn Kim Frierson, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

## I. FACTS

Matthew Jones appeals the denial of his motion to withdraw his plea. We affirm. On June 16, 2005, Jones pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343. The plea agreement included a set of stipulated facts upon which the guilty plea was predicated. In particular, the plea agreement established that Jones had learned at some point in 2000 of an investment opportunity known as the "Miracle Car Deal." Other participants in the Miracle Car Deal informed Jones that a wealthy car collector had recently died, leaving a fleet of luxury cars. As part of an attempt to liquidate the estate, the luxury cars were being sold off at cut rate prices in order to avoid tax consequences. In reality, neither the cars, nor the estate, existed.

Before learning of the Miracle Car Deal's fraudulent nature, Jones began to solicit other investors. Jones informed the investors that he would collect their money for safekeeping and that none of the funds would be turned over to the estate until the cars were delivered. Between May 2001 and March 2002, Jones successfully solicited forty-five different investors, who entrusted him with approximately $1.3 million. Contrary to his representations, Jones spent this money on himself, not on acquiring Miracle Cars. His expenditures included the purchase of property in the San Juan Islands and payments for staff, consultants, and other services related to his personal business ventures.

In February 2002, Jones first learned that the Miracle Car Deal perpetrators were under federal investigation, though he did not disclose this information to his investors.[1] Five

---

[1] Jones also continued to solicit new investors for another month after learning of the investigation.

months later, in July 2002, the original Miracle Car Deal pro-moters were indicted in federal court. After discovering the fraud, Jones's investors called him requesting refunds. Rather than returning their money, Jones informed them that the government had seized the off-shore account in which he had been keeping the funds.[2]

The grand jury returned a Superseding Indictment against Jones on March 2, 2005, charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of money laundering, in violation of 18 U.S.C. § 1957. In exchange for his guilty plea, the government dropped the three money laundering counts and agreed to recommend a sentence that took Jones's acceptance of responsibility into consideration. The change of plea hearing was held on June 16, 2005, before a magistrate judge. At the hearing, the court engaged in a colloquy with Jones to ensure that the plea was voluntary, knowing, and intelligent, and to determine whether there was a factual basis for the plea. The U.S. Attorney informed Jones that the offense of wire fraud required that the following elements be proven:

> First, the Defendant devised a material scheme and artifice to defraud or to obtain money and property by means of material false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false.
>
> Second, that the Defendant acted with the intent to defraud.
>
> And, third, that the Defendant transmitted or caused to be transmitted by means of wire, radio or television communication in interstate or foreign commerce any writings, signs, signals, pictures or sounds

---

[2]This is the only misrepresentation Jones admitted in the plea agreement.

for the purpose of executing such a scheme and arti-
fice.

(Tr. of Change of Plea Hr'g, Dec. 8, 2005, at 6-7).

The U.S. Attorney then proceeded to summarize the agreed
statement of facts detailed in the plea agreement. After this
recitation, the magistrate judge asked defendant whether he
agreed with the summary. Defense counsel responded, and the
government agreed, that "when [Jones] first became aware of
and involved in the Miracle Car Deal, he did not know there
was anything fraudulent about it." *Id.* at 11. Defense counsel
then added,

It's our understanding that, and our belief, that in
looking at the statute that his criminal guilt is that
after he had received this very significant amount of
money, that he disposed of it in a way that was
inconsistent with applying it on car purchases and
then he made false representations to those people
that had given him the money as to what had hap-
pened. He told them that the government had seized
it. That was clearly a misrepresentation. So stated
simply, we believe he acquired the money in good
faith, but he disposed of it unlawfully and used the
wires to misrepresent to the owners of the funds
what had happened to the money.

*Id.* at 11-12. The district court then noted that counsel's state-
ments were "completely consistent with the facts as set forth."
*Id.* at 12. Jones also agreed with his attorney's assertions.

At the end of the colloquy, Jones formally entered a plea
of guilty to one count of wire fraud in violation of 18 U.S.C.
§ 1343. The magistrate judge found that the plea was know-
ing, intelligent, and voluntary, and that the agreed-upon facts
provided an independent basis for the plea. The magistrate
judge then recommended that the district court accept the

plea, and on July 5, 2005, the district court adopted the magistrate judge's recommendation.

On December 1, 2005, Jones requested a third continuance of his sentencing date, then set for December 9, expressing a desire to consult with his fourth successive new counsel about a possible withdrawal of his plea. The district court denied the request for a continuance. In response, Jones asked to withdraw his guilty plea, claiming that he discovered only after the plea was entered that his admitted conduct did not meet the elements of wire fraud. Because he denied making any false representation prior to receiving the victims' money, Jones argued that he had not obtained any money or property by means of material false and fraudulent pretenses, representations and promises.

A hearing on the motion to withdraw was scheduled for January 6, 2006. Jones filed a supplemental memorandum one week before the hearing, noting that he "ha[d] not asked this Court to strike his plea of guilty, but only to grant him *leave* to withdraw his plea . . . . He has . . . not made a firm decision to withdraw his plea." (Def. Reply to Gov't Supp. Resp. to Def. Motion to Withdraw Plea, Dec. 29, 2005, at 6 n.4). Jones also repeated his request for a continuance.

At the hearing, the district court denied Jones's request for a continuance, noting that the court would not countenance further delay. The district court also denied Jones's motion to withdraw his plea, concluding that "the facts as admitted in the plea colloquy do support a finding of guilt," and that defendant's motion "appears to be simply a change of heart and does not constitute a fair and just reason to grant a withdrawal." (Tr. of Sentencing Hr'g, Feb. 14, 2006, at 16.). The court added that it thought the motion was "part of a well established pattern and behavior designed to simply continue or delay resolution of this case." *Id.* at 16-17.

## II.   DISCUSSION

Jones argues that his acts do not fall within the ambit of § 1343 and that the district court abused its discretion in denying his motion to withdraw. We reject both contentions and affirm.

### A.   The Scope of 18 U.S.C. § 1343

**[1]** 18 U.S.C. § 1343 criminalizes the act of wire fraud. The statute provides, in relevant part,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 (2002). The Supreme Court has interpreted § 1343 broadly and twice held that individuals who retain or misappropriate the money or property of others, regardless of how they acquired it, fall within the purview of mail or wire fraud.

In *Carpenter v. United States*, David Carpenter was accused of aiding and abetting K. Foster Winans in committing wire fraud. 484 U.S. 19 (1987). Winans was employed as a reporter for the Wall Street Journal. He wrote a daily column, "Heard on the Street," that provided positive or negative information on various stocks. Although Winans was not privy to confidential information, his column was well-respected and the district court found that it affected the prices of stocks it discussed. *Id*. at 22-23. Official policy at the Jour-

nal was that prior to publication, an article's content was confidential information owned by the newspaper. In spite of this rule, Winans began to leak information from his article, prior to publication, to friends who would buy or sell stocks based on the likely impact of the article on stock prices. Eventually, Winans was convicted of mail and wire fraud, among other things, and Carpenter was convicted of aiding and abetting in the commission of securities fraud, and mail and wire fraud. *United States v. Carpenter*, 791 F.2d 1024, 1025 (2d Cir. 1986). Carpenter appealed his conviction, arguing, in part, that Winans's behavior did not amount to fraud, as proscribed by the mail fraud statute.

**[2]** The Court rejected his argument, stating that "[s]ections 1341 and 1343 reach *any scheme to deprive another of money or property* by means of false or fraudulent pretenses, representations, or promises."**[3]** *Carpenter*, 484 U.S. at 27 (emphasis added). Winans's scheme, in which he wrongfully retained and disseminated information owned by the Journal, fell within this broad definition. Even more harmful to Jones's case, the Court added that "[t]he concept of 'fraud' includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." *Id.* (citing *Grin v. Shine*, 187 U.S. 181, 189 (1902)) (quotations omitted).

The Court upheld the wire fraud conviction of another defendant accused of wrongfully retaining money or property in *Pasquantino v. United States*, 544 U.S. 349 (2005). In *Pasquantino*, petitioners were involved in a scheme to smuggle large quantities of liquor into Canada, thereby avoiding the hefty excise taxes imposed on imports. As with Jones's

---

**[3]**We also have construed fraud broadly in the context of the mail fraud statute. For instance, in *United States v. Bohonus*, the court explicitly referred to the "broad interpretation of 'fraud' " and noted, "[t]he fraudulent nature of the 'scheme or artifice to defraud' is measured by a non-technical standard." 628 F.2d 1167, 1171 (9th Cir. 1980).

scheme, petitioners did not fraudulently take money from the Canadian government; they fraudulently deprived the Canadian government of money to which it was entitled. *Id*. at 356. In deciding that this activity was, in fact, wire fraud, the Court noted that "fraud at common law included a scheme to deprive a victim of his entitlement to money. For instance, a debtor who concealed his assets when settling debts with his creditors thereby committed common-law fraud." *Id*.

**[3]** Given this broad understanding of "fraud," Jones's argument that he did not fraudulently obtain money within the meaning of § 1343 lacks merit. Jones received $1.3 million from investors, money that he was supposed to keep safe and use only for the purchase of automobiles. Instead, he fraudulently appropriated the money, lying to investors about its disposition in order to avoid returning it to its rightful owners. Although, per the plea agreement, Jones did not possess a fraudulent intent when he received the money, his fraudulent appropriation of the funds still satisfies the elements of § 1343.

## B.   The Validity of Appellant's Plea

**[4]** A plea agreement must be knowing and voluntary, which requires that "the defendant possess[ ] an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). In addition, Federal Rule of Criminal Procedure 11 requires judges to determine that a plea has a factual basis. Fed. R. Crim. P. 11. To satisfy this requirement, "[t]he judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' " *McCarthy*, 394 U.S. at 467 (citation omitted). Here, Jones argues that his plea is invalid because he did not understand that the facts to which he stipulated in his plea agreement failed to qualify as wire fraud. Because Jones's argument is based entirely on the same misapprehension of the law discussed above, the argument lacks merit.

## C.   Waiver of Plea

We review the district court's denial of Jones's motion to withdraw his plea for abuse of discretion. *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003). A court abuses its discretion when it rests its decision on an inaccurate view of the law. *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005).

**[5]** This court has made clear that "[a] defendant may withdraw a guilty plea after a district court accepts the plea but before sentencing if 'the defendant can show a fair and just reason for requesting the withdrawal.' " *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004) (quoting Fed. R. Crim. P. 11(d)(2)(B)). The burden of demonstrating such a fair and just reason rests with defendant; however, the standard is applied liberally. *See, e.g.*, *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005); *Garcia*, 401 F.3d at 1011; *Ortega-Ascanio*, 376 F.3d at 883. "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Ortega-Ascanio*, 376 F.3d at 883.

**[6]** The sole reason Jones offered for withdrawal was that the magistrate judge failed to ensure that his plea included the necessary factual basis, thereby rendering the Rule 11 plea colloquy inadequate. As discussed above, this argument lacks merit. Although the standard for allowing withdrawal of a plea is applied liberally, Jones is still required to show some "fair and just" reason for withdrawing his plea. Here, he offered nothing more than his own inaccurate interpretation of the law. Without more, we cannot say that the district court abused its discretion in denying his motion to withdraw his plea.

**AFFIRMED.**