**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

TERRY ALAN ENSMINGER,
          *Defendant-Appellant.*

No. 08-30183

D.C. No.
1:07-cr-00156-RFC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
March 10, 2009—Seattle, Washington

Filed June 3, 2009

Before: William A. Fletcher, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Anthony Gallagher (argued) and Steven C. Babcock, Office of the Federal Public Defenders for the District of Montana, Billings, Montana, for defendant-appellant Terry Alan Ensminger.

Marcia Hurd (argued), Eric B. Wolff, and William W. Mercer, United States Attorney for the District of Montana, Billings, Montana, for plaintiff-appellee United States of America.

## OPINION

TALLMAN, Circuit Judge:

Terry Alan Ensminger pled guilty to a single count of failure to register as a sexual offender in violation of 18 U.S.C. § 2250(a), the enforcement provision of the Sex Offender Registration and Notification Act. After securing a continuance of the sentencing hearing, he moved to withdraw his guilty plea in order to file a motion to dismiss the indictment. The district court denied his motion and imposed a 21-month sentence. On appeal, Ensminger contends that the district court abused its discretion by denying his motion to withdraw his guilty plea. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

## A

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587. Title I of the Act codifies the Sex Offender Registration and Notification Act ("SORNA"), establishing a national system for registration "[i]n order to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. "SORNA is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states." *United States v. Ditomasso*, 552 F. Supp. 2d 233, 236 (D.R.I. 2008) (citing 152 Cong. Rec. S8012, 8013 (July 20, 2006)).[1]

---

[1] In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, as amended, 42 U.S.C. § 14071, which conditions federal law enforcement funding on states' adoption of mandatory sex offender registration laws. *Smith v. Doe*, 538 U.S. 84, 89-90 (2003). By 1996, every state and the District of Columbia had enacted some version of the Act, which is commonly termed a "Megan's Law." *Id.*

SORNA requires individuals who fall under its definition of "sex offender" to register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," and to update his registration in the relevant jurisdiction after each change of name, residence, employment, or student status. 42 U.S.C. § 16913. SORNA provides for criminal penalties for failing to comply with its registration requirements. Section 2250(a) states as follows:

Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

**B**

In September 2007, Ensminger, an individual required under SORNA to register as a sex offender based on a prior felony conviction, traveled interstate from Washington to Montana.[2] He was later arrested in Billings and, on November 15, 2007, he was indicted in the District of Montana on one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a). Ensminger initially entered a plea of not guilty before a Magistrate Judge.

On January 10, 2008, after the deadline to file pre-trial motions had passed, Ensminger entered into a plea agreement in which he admitted guilt and agreed to plead guilty to the charge. Ensminger appeared before the Honorable Richard F. Cebull on a motion to change his plea. After finding that the plea was made knowingly, intelligently, and voluntarily, Judge Cebull accepted the guilty plea.

The Probation Department prepared a presentence investigation report ("PSR") and circulated it to the parties. Based on the total offense level and Ensminger's criminal history, the PSR recommended a Guidelines sentencing range of 15 to 21 months. The sentencing hearing was originally set for April 17, 2008. However, upon Ensminger's motion, the hearing was continued to allow defense counsel additional time to conduct further investigation and to research and formulate objections to the findings and recommendations of the probation officer.

Ensminger subsequently filed a motion to withdraw his

---

[2]In June 1999, Ensminger was convicted of Third Degree Assault with Sexual Motivation, a felony, in Washington's Spokane County Superior Court. He was sentenced to 6 months incarceration with one year of supervised release. As part of the criminal judgment, Ensminger was required to register as a sexual offender and to provide written notice of any change in address.

guilty plea. He based his motion on an order from the Middle District of Florida in *United States v. Powers*, 544 F. Supp. 2d 1331 (M.D. Fla. 2008), *vacated*, 562 F.3d 1342 (11th Cir. 2009). On April 18, 2008, the district judge in that case granted a defense motion to dismiss an indictment, holding that § 2250(a), SORNA's enforcement provision, did not regulate activities that substantially affected interstate commerce and therefore exceeded Congress's power under the Commerce Clause.[3] *Id.* at 1336. Ensminger argued that the intervening decision provided grounds to withdraw his guilty plea in Montana because his case was "subject to dismissal for all the same reasons articulated by the [Florida] [c]ourt in *Powers.*" The government opposed his motion.

By order dated May 14, 2008, the Montana district court denied Ensminger's motion. The district court ruled that Ensminger had failed to present a "fair and just" reason to withdraw his guilty plea, noting that *Powers* had no precedential value in the Ninth Circuit or in Montana. In so ruling, Judge Cebull also expressly rejected the *Powers* decision on the merits, finding that "[t]he enactment of § 2250, the criminal penalty provision of SORNA, was a valid exercise of congressional authority under the Commerce Clause." Judge Cebull noted that this lone Florida district court decision ran contrary to the existing case law unanimously upholding SORNA against Commerce Clause challenges.

The sentencing hearing proceeded as scheduled and Ensminger was sentenced to a term of 21 months incarceration, to be followed by 3 years of supervised release.

---

[3]On the government's appeal, the Eleventh Circuit subsequently vacated the *Powers* decision in a succinct opinion, holding that the failure-to-register offense set forth in § 2250(a) does not violate the Commerce Clause. *United States v. Powers*, 562 F.3d 1342, 1344-45 (11th Cir. 2009).

## II

Ensminger's sole contention on appeal is that the district court improperly denied his presentence motion to withdraw his guilty plea.[4] A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Ruiz*, 257 F.3d 1030, 1033 (9th Cir. 2001). A court abuses its discretion when it rests its decision on an inaccurate view of the law, *see United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007), or on "a clearly erroneous finding of fact," *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003).

[1] Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."[5] The burden of establishing that withdrawal is warranted rests on the defendant. *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005). The fair and just standard "is generous and must be applied liberally." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). A defendant, however, may not withdraw his guilty plea "simply on a lark." *United States v. Hyde*, 520 U.S. 670, 676-77 (1997). We have often repeated that "[f]air and just reasons for withdrawal include inadequate Rule 11 plea collo-

---

[4]As acknowledged by the parties, Ensminger remained able to challenge SORNA's constitutionality on appeal. *See, e.g.*, *United States v. Knowles*, 29 F.3d 947, 951-52 (5th Cir. 1994) (noting that basing a conviction on an unconstitutional statute is both "plain" and "error"). Ensminger, however, has repeatedly expressed that he is not doing so as part of this appeal. Therefore, we need not reach the ultimate constitutional question. *See United States v. Mi Kyung Byun*, 539 F.3d 982, 986 n.6 (9th Cir. 2008).

[5]Prior to the December 2002 amendments, the rule governing a defendant's ability to withdraw a guilty plea before sentencing was found in Federal Rule of Criminal Procedure 32(e). "Despite minor language changes in the rule, the 'fair and just reason' standard remains the same." *United States v. Davis*, 428 F.3d 802, 805 n.1 (9th Cir. 2005) (quoting *Nostratis*, 321 F.3d at 1208 n.1).

quies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Jones*, 472 F.3d at 1141; *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987) (marking the origin of this language).

Here, Ensminger does not challenge the adequacy of the Rule 11 hearing, but instead argues that an intervening circumstance—namely, the *Powers* decision from the Middle District of Florida—satisfies his burden.[6] Ensminger acknowledges that, even if it were still good law, "a district court opinion does not have binding precedential effect," *NASD Dispute Resolution, Inc. v. Jud. Council of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007), especially one from another federal circuit. *See also McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions."). He nevertheless contends that Rule 11(d)(2)(B) requires that he be permitted to withdraw his guilty plea so that he too can challenge the constitutionality of SORNA on Commerce Clause grounds. We have never applied the fair and just standard in a way that would extend to Ensminger's case and we decline to do so here.

Ensminger primarily relies on our decision in *United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004), which is the only occasion where we have considered a claim of "intervening circumstances" based on a change in the law. In *Ortega-Ascanio*, the defendant pled guilty to illegally reentering the United States following removal in violation of 8 U.S.C. § 1326(a). *Id.* at 882. After his guilty plea but before sentenc-

---

[6]Ensminger cites to the "basic, four-part balancing test" applied by some of our sister circuits when deciding motions to withdraw guilty pleas. *See, e.g.*, *United States v. Gonzalez*, 202 F.3d 20, 24 (1st Cir. 2000). Our circuit has generally avoided this approach. *United States v. Garcia*, 401 F.3d 1008, 1013-14 (9th Cir. 2005).

ing, the Supreme Court decided *INS v. St. Cyr*, 533 U.S. 289 (2001), which held that discretionary relief under § 212(c) of the Immigration and Nationality Act of 1952 remained available to aliens otherwise eligible for such relief at the time they pled guilty to the offense, notwithstanding the effective date of the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigrant Responsibility Act. *Id.* at 326. Significantly, *St. Cyr* overruled binding Ninth Circuit precedent to the contrary. *Ortega-Ascanio*, 376 F.3d at 886 ("At the time Ortega-Ascanio pled guilty . . . Ninth Circuit law precluded Ortega-Ascanio's *St. Cyr*-type argument."). The defendant filed a motion to withdraw his guilty plea so that he could move to dismiss his indictment on the ground that his prior order of deportation was invalid under *St. Cyr*. The district court denied the motion, finding that, irrespective of the material change in law, the defendant's plea was nonetheless voluntary and valid. *Id.* at 882-83.

On appeal, we held that the district court, by rigidly "limit[ing] 'a fair and just reason' to only those cases in which the plea is invalid," applied the wrong legal standard to the defendant's motion and thus abused its discretion. *Id.* at 884-85. We concluded that the defendant had satisfactorily demonstrated a fair and just reason for withdrawing his plea— "namely, an intervening Supreme Court decision that overruled Circuit precedent and gave him a plausible ground for dismissal of his indictment." *Id.* at 887. Accordingly, we reversed the district court's denial of the defendant's motion to withdraw his guilty plea and remanded for resolution of a motion to dismiss the indictment.

**[2]** A marked shift in governing law that gives traction to a previously foreclosed or unavailable argument may operate as a fair and just reason to withdraw a guilty plea. A development in non-binding authority such as a district court decision in another circuit, by contrast, is not a change in the law in this sense and therefore does not constitute "intervening circumstances" satisfying a defendant's burden under Rule

11(d)(2)(B). For this reason, Ensminger's reliance on *Ortega-Ascanio* and the authorities he cites from our sister circuits is unavailing. *See, e.g.*, *United States v. Knowles*, 29 F.3d 947, 951-52 (5th Cir. 1994) (holding that conviction constituted plain error in light of a subsequent binding circuit opinion finding unconstitutional the statute under which the defendant was convicted); *United States v. Presley*, 478 F.2d 163, 167-68 (5th Cir. 1973) (holding that defendants should have been permitted to withdraw guilty pleas where an intervening Supreme Court decision interpreted the statute of conviction in a manner that gave defendants a plausible factual defense).

[3] In the instant case, there was no precedent from our circuit, the Supreme Court, or even the District of Montana that prevented Ensminger from timely challenging SORNA on constitutional grounds in the district court. The Commerce Clause challenge was well explored by the time Ensminger entered his guilty plea. *See, e.g.*, *United States v. Mason*, 510 F. Supp. 2d 923, 931-32 (M.D. Fla. 2007); *United States v. Hinen*, 487 F. Supp. 2d 747, 757-58 (W.D. Va. 2007), *rev'd on other grounds sub nom. United States v. Hatcher*, 560 F.3d 222 (4th Cir. 2009); *United States v. Templeton*, No. CR-06-291-M, 2007 WL 445481, at *3-4 (W.D. Okla. Feb. 7, 2007); *United States v. Madera*, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007), *rev'd on other grounds*, 528 F.3d 852 (11th Cir. 2008); *see also United States v. Van Buren*, No. 3:08-CR-198, 2008 WL 3414012, at *11-12 (N.D.N.Y. Aug. 8, 2008) (listing cases rejecting Commerce Clause challenges to SORNA); *United States v. Utesch*, No. 2:07-CR-105, 2008 WL 656066, at *14 n.25 (E.D. Tenn. Mar. 6, 2008) (same). Ensminger made the strategic decision not to venture down this avenue before negotiating a plea agreement with the prosecution.[7]

---

[7]Counsel acknowledged at oral argument that he could have made this motion prior to the expiration of the motions deadline, but in the face of the above-cited, unanimous precedent supporting the constitutionality of SORNA, Ensminger decided not to do so.

**[4]** The subsequent Florida district court decision in *Powers* changed nothing of consequence. Unlike the direct effect of *St. Cyr*, it did nothing to alter the legal landscape in the District of Montana or our circuit. It certainly did not "overrule" precedent, nor did it "g[i]ve [Ensminger] a plausible ground for dismissal of his indictment" that was previously unavailable. *Ortega-Ascanio*, 376 F.3d at 887. As mentioned above, the "ground"—i.e., the Commerce Clause challenge to § 2250(a)—was at all times available to Ensminger. A previously unavailable basis for a motion to dismiss did not suddenly materialize. No new argument or defense became accessible. Moreover, *Powers*, a non-binding district court case from a different circuit, did not significantly increase the plausibility of the argument.

Ensminger offers no valid excuse for his failure to timely bring a constitutional challenge to the statute by the pre-trial motions deadline. He does not allege, for example, that his counsel deficiently failed to advise him regarding the availability of a motion to dismiss his indictment on this basis. *Cf. McTiernan*, 546 F.3d at 1167 (confirming that "[e]rroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice"); *Davis*, 428 F.3d at 808 (remanding to the district court to determine whether counsel's "gross mischaracterization" of the likely sentence plausibly could have motivated the decision to plead guilty). Rather, Ensminger made the informed choice to forego an available strategy and to knowingly, intelligently, and voluntarily enter into a valid plea agreement. Our prior decisions make clear that a change of heart—even a "good faith change of heart"—is not a fair and just reason that entitles Ensminger to withdraw his plea, even where the government incurs no prejudice. *Rios-Ortiz*, 830 F.2d at 1069.

We are unmoved by Ensminger's argument that he decided against filing an otherwise available motion to dismiss because, to his knowledge, courts to that date had universally rejected the Commerce Clause challenge. Whether or not to

plead guilty without first challenging SORNA or the validity of his indictment was Ensminger's choice to make. His personal skepticism at the time regarding the possible success of the motion is legally irrelevant for the purpose of Rule 11(d)(2)(B). At the plea colloquy, Ensminger solemnly acknowledged that he was relinquishing many rights by pleading guilty, which included the right to challenge by motion the validity of the charge. The fact that Ensminger later changed his mind, even if in good faith, is not a fair and just reason in the context of this case. The extensive safeguards and substantial requirements imposed on district courts in accepting pleas "are designed to ensure that the criminal defendant who pleads guilty understands exactly what the plea means. Where, as here, the district court fully complied with Rule 11's requirements, the result should be more than ephemeral." *Rios-Ortiz*, 830 F.2d at 1070 (internal citation omitted); *accord Hyde*, 520 U.S. at 676-77 ("Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice." (quoting Advisory Committee's Notes on Fed. R. Crim. P. 32, 18 U.S.C. App. 794 (1983))).

Ensminger's proposed interpretation of Rule 11(d)(2)(B) would require us to hold as a matter of law that courts must permit withdrawal prior to sentencing if a defendant can point to some court decision somewhere that offered him hope of escaping conviction or otherwise caused him to second-guess his prior decision to plead guilty. We decline this invitation. Such a broad interpretation would displace the district court's ability to exercise discretion and run afoul of Rule 11 itself, which "places the burden of showing a fair and just reason for withdrawal of a guilty plea on the defendant," and "is inconsistent with Rule 11's purpose of ensuring some finality at the time pleas are accepted." *Rios-Ortiz*, 830 F.2d at 1069. The guilty plea is not a placeholder that reserves Ensminger's right to our criminal system's incentives for acceptance of

responsibility unless or until a preferable alternative later arises. Rather, it is a " 'grave and solemn act,' which is 'accepted only with care and discernment.' " *Hyde*, 520 U.S. at 677. Once the plea is accepted, permitting withdrawal is, as it ought to be, the exception, not an automatic right.

It is certainly not unforeseeable that defendants who have pled guilty might later change their minds, especially, as was the case here, after the sentencing materials have been circulated to the parties and once the prosecution's recommendation is made known. *See, e.g.*, *United States v. Jeronimo*, 398 F.3d 1149, 1152 (9th Cir. 2005); *Nostratis*, 321 F.3d at 1211-12. The onus, however, must remain on the defendant and defense counsel to take adequate precautions and reserve the rights and arguments that might materially affect the risk-benefit analysis when deciding to enter a guilty plea. We see no reason to dilute even further the effectiveness and finality of valid guilty pleas simply because Ensminger has discovered a new non-binding legal authority to cite in a motion he could have filed before pleading guilty, but chose not to bring. To give him that right on this record undermines any sort of workable standard and invites abuse.

**[5]** The general rule is that an intervening change in governing law may operate as a fair and just reason to withdraw a guilty plea. Ordinarily, however, this development in the law—whether by rule, statute, caselaw, or otherwise—should provide the defendant with a previously unavailable ground sufficient to provide some material relief. *Ortega-Ascanio*, 376 F.3d at 886. The non-binding authority at issue here is too far removed and falls short of the standard contemplated by our circuit's interpretation of Rule 11(d)(2)(B). We hold that *Powers* is not an intervening circumstance of sufficient weight to constitute a fair and just reason entitling Ensminger to withdraw his guilty plea.

We briefly address Ensminger's argument that the district court was precluded from considering the merits of the *Pow-*

*ers* decision in adjudging his motion to withdraw his plea. The district court here not only rejected *Powers* because it has no precedential value in the District of Montana but also rejected the substance of *Powers*'s Commerce Clause analysis, finding it unpersuasive. *See also United States v. Vardaro*, 575 F. Supp. 2d 1179, 1185-88 (D. Mont. 2008) (Cebull, J.) (holding that the enactment of § 2250(a) and § 16913 of SORNA was a valid exercise of congressional authority under the Commerce Clause). Ensminger insists that the only correct procedure under Rule 11(d)(2)(B) would have been to allow him to withdraw his plea of guilty so that he could independently file an untimely challenge to SORNA's constitutionality. Implicit in this argument is the contention that the district court, in reviewing a motion to withdraw a guilty plea and in considering whether the reason tendered is fair and just, cannot under any circumstances consider the substance of the intervening court decision offered by the defendant or the merit of the underlying argument.

Our authority indicates otherwise. *See Jones*, 472 F.3d at 1139-41 (reviewing merits of underlying argument regarding the elements of wire fraud and denying the defendant's motion to withdraw his guilty plea because he had failed to offer a fair and just reason). Whether an intervening court decision gives a defendant a sufficient ground for relief requires the district court to consider the substance of the new authority and the anticipated argument. *See Ortega-Ascanio*, 376 F.3d at 887. It is unreasonable to say that Judge Cebull was powerless to consider the merits of the *Powers* decision when ruling on Ensminger's motion to withdraw his plea. Rather, we think such an inquiry lies at the heart of the district court's deliberation of what might constitute a fair and just reason.

**[6]** When presented with a motion to withdraw a guilty plea based on an intervening legal authority, it is squarely within a district court's discretion to consider the soundness of the decision, the weight of contrary authority, and its potential

application to the case at hand when determining whether it is fair and just to permit a defendant to withdraw an otherwise valid plea of guilty. Judge Cebull did so here and found *Powers* unpersuasive and deserving of no weight.

**[7]** In sum, at issue is whether *Powers*—an isolated, non-binding district court decision from another federal circuit that our district court found legally unsound—entitles Ensminger to withdraw his valid guilty plea. The district court concluded that this did not present a fair and just reason to do so, as required under Rule 11(d)(2)(B). There was no abuse of discretion in so ruling.

### III

As we have long recognized, "[a] defendant does not always have the right to withdraw a plea because the decision to allow withdrawal of a plea is solely within the discretion of the district court." *Nostratis*, 321 F.3d at 1208. We remain tethered to this rule. The district court did not abuse its discretion in concluding that the *Powers* decision from the Middle District of Florida did not constitute a fair and just reason entitling Ensminger to withdraw his guilty plea. Ensminger does not here contend that § 2250(a), the criminal penalty provision of SORNA, is an invalid, unconstitutional exercise of congressional authority under the Commerce Clause. Therefore, we leave to another day the resolution of this constitutional question.

**AFFIRMED.**