**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

EDWARD SHOWALTER,
              *Defendant-Appellant.*

No. 08-50109

D.C. No.
8:06-cr-00129-AG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
April 8, 2009—Pasadena, California

Filed June 26, 2009

Before: Harry Pregerson and David R. Thompson,
Circuit Judges, and Jeremy D. Fogel*, District Judge.

Opinion by Judge Thompson

---

The Honorable Jeremy D. Fogel, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Ezekiel E. Cortez, San Diego, California, for the defendant-appellant.

Mieke Biesheuvel, Assistant United States Attorney, Santa Ana, California, for the appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Appellant Edward Showalter ("Showalter") pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. He now appeals the order denying his motion to withdraw that guilty plea and his sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm the denial of Showalter's motion to withdraw his guilty plea, but we vacate his sentence and remand for resentencing.

## I.  *Background*

From 2003 to 2005, Showalter owned and operated High Park Investments ("High Park"). He raised capital to improve real property and then sell it for a profit. Showalter promised investors returns of 10% to 26%. As security for the investments, he was supposed to record deeds of trust on the properties in favor of investors who provided money for the improvements. The deeds of trust, however, often were not recorded, and if they were, the properties were over-encumbered.

Showalter raised more than $15 million from investors, but he diverted money he received for uses other than the promised improvements to the properties. This included making other investments, paying High Park operating expenses, and using money for personal purposes.

The government filed an information against Showalter, charging him with one count of wire fraud in violation of Title 18 U.S.C. § 1343 for defrauding his investors. Pursuant to a plea agreement, Showalter pleaded guilty to that charge. Approximately seven months later, Showalter moved to withdraw his guilty plea on the basis of newly discovered/available evidence. The district court denied the motion. Showalter was sentenced to 151 months imprisonment followed by three years of supervised release, $15,418,500 in restitution, and a $100 special assessment. This appeal followed.

## II.  *Discussion*

### A.  *Withdrawal of Guilty Plea*

The first issue we consider is whether the district court abused its discretion by denying Showalter's motion to withdraw his guilty plea.

We review for abuse of discretion a district court's denial of a motion to withdraw a guilty plea. *United States v. Ortega-Ascanio,* 376 F.3d 879, 883 (9th Cir. 2004). Findings of fact that underlie the district court's exercise of its discretion are reviewed for clear error. *Nostratis*, 321 F.3d at 1208.

**[1]** The decision whether to permit the withdrawal of a plea "is solely within the discretion of the district court." *Nostratis,* 321 F.3d at 1208. Before the imposition of a sentence, however, withdrawal of a guilty plea should be freely allowed if a defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We have explained that "[f]air and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (internal citation omitted). The defendant has the burden of demonstrating the existence of at least one of these conditions. Fed. R. Crim. P. 11(d)(2)(B); *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005).

### 1. *Adequacy of District Court's Analysis*

Showalter argues the district court erred in denying his motion to withdraw his guilty plea because it failed to analyze two of the three fair and just reasons he offered as grounds for withdrawing his plea. He contends the district court focused on only whether there was "newly discovered evidence" despite his presentation of three distinct "fair and just reasons": (1) newly discovered evidence; (2) newly available evidence; and (3) change in circumstances.

### a. *Newly Available Evidence*

**[2]** Although Showalter argues the district court ignored his "newly available evidence" argument, he does not make clear how that argument differs from his "newly discovered evi-

dence" argument. Although he presents the two arguments separately, both rely on the same witness declarations, and both are assertions that these "new" declarations are a fair and just reason justifying withdrawal of the guilty plea. The district court's analysis and conclusion that Showalter's proffered evidence was not new adequately resolved both contentions. The district court made a factual finding that Showalter was "aware of the potential evidence [the witnesses] could supply" and "could have not pleaded guilty and compelled these same witnesses to testify on his behalf at trial." This finding was not clearly erroneous.

Even if the district court had failed to address Showalter's "newly available evidence" argument, that argument is meritless because "newly available evidence" does not constitute "newly discovered evidence" justifying withdrawal of a guilty plea. *See United States v. Lockett,* 919 F.2d 585, 591-92 (9th Cir. 1990). In *Lockett,* we affirmed the district court's denial of a motion to withdaw a guilty plea where a co-defendant, who previously asserted her right not to testify, offered "newly available" testimony that exculpated the defendant. *Id.* We stated that "great caution" must be exercised in considering evidence "newly discovered" when it existed all along. *Id.* (citing *United States v. Jacobs,* 475 F.2d 270, 286 n.33 (2d Cir. 1973)).

### b.   *Change in Circumstances*

Showalter also contends the district court ignored his argument that there was a "change in circumstances" that constituted a fair and just reason for him to withdraw his guilty plea. He does not make clear how such "change in circumstances" or "intervening circumstances" differs from the "newly discovered evidence" on which his motion was based. The district court reasonably assumed that the alleged intervening circumstances were the proffered declarations of witnesses and Showalter's alleged realization that the government had overstated the strength of its case against

him. He argued that, "Between the new facts that have emerged and Mr. Showalter's realization that the SEC/Government have been overstating their case at best if not flat out creating facts at worst, Mr. Showalter is in a significantly different position today than he was one year ago when he pleaded guilty."

**[3]** Just as the proffered declarations do not constitute newly discovered evidence, they do not constitute an intervening circumstance. As we have stated, the district court properly addressed this argument and concluded the witnesses were known to Showalter at the time he pleaded guilty and could have been called to testify for him at trial. Showalter does not explain how witnesses known to him at the time he entered his plea can be considered an intervening circumstance.

### c. Strength of Government's Case

**[4]** The district court also thoroughly addressed Showalter's argument that the SEC and government exaggerated the strength of their case against him. It explained why it was not persuaded by the argument:

> In *Brady v. United States*, 397 U.S. 742 (1970), the Supreme Court rejected the idea that a defendant could withdraw his guilty plea simply upon discovering that the State would have a weaker case against him than anticipated. Specifically the Court stated:
>
>> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted
>>
>> . . . . A defendant is not entitled to withdraw his plea merely because he discovers long

> after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. *Brady*, 397 U.S. at 756-57.

> Defendant has merely shown that he has reevaluated the government's purportedly "rock solid" case against him and second-guessed his decision to plead guilty. But Defendant's claim that he did not see all the government's cards before pleading guilty does not entitle him to withdraw his plea. *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004).

For the reasons set forth in the district court's order, Showalter's belief that the government had a weaker case than he originally thought does not constitute a fair and just reason to withdraw his guilty plea.

### d. New Fact

[5] Lastly, Showalter mentions a "new fact," which appears to be related to his "changed circumstances" argument. He asserts that, after he pleaded guilty, the properties that he represented would be improved were developed and sold, reducing the amount of the previously anticipated loss. He characterizes this as a "material change in circumstances." The government addresses this argument accurately:

> [Showalter] is mistaken, however, that this 'new fact' constitutes a material change in circumstances. [Showalter] was charged with and pled guilty to wire fraud for misappropriating investors' money. That properties he used to lure people to 'invest' their money in High Park Investments may have sold is in no way connected to whether [Showalter] defrauded investors and whether he intended to defraud them.

**[6]** Even if Showalter were correct in asserting that the loss amount turned out to be less than it was anticipated to be, the only possible impact from that would be to decrease the applicable Guideline range, and potentially lessen his sentence. But, a defendant may not withdraw a guilty plea because his sentence may be different from that which was originally anticipated. *See Nostratis,* 321 F.3d at 1211.

**[7]** The district court adequately considered and correctly resolved all of Showalter's arguments pertaining to his motion to withdraw his guilty plea.

### 2. *Application of Correct Legal Standard*

Showalter also argues the district court applied the wrong legal standard in determining whether he offered newly discovered evidence. He contends the evidence should have been deemed "new" because (1) "he had no way of knowing that [the investors he was alleged to have defrauded] would later be willing to swear under oath that they did not feel defrauded by him," (2) he "was not in a position to compel the 'victims' in this case to favorably testify on his behalf," and (3) he "could not foresee that these 'victims' would one day come forward to provide exonerating evidence." According to Showalter, the district court adopted a heightened legal standard for what constitutes new evidence, improperly relying on law applicable to motions for a new trial, which motions are granted only in exceptional cases.

**[8]** Showalter's argument lacks merit. The district court applied the proper legal standard as to what constitutes newly discovered evidence justifying a defendant's withdrawal of a guilty plea. Indeed, the district court demonstrated that it understood the applicable standard by setting forth the very standard that Showalter alleges it failed to apply:

> "A defendant may withdraw a plea of guilty or nolo contendere after the court accepts the plea, but

before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004) (quoting *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 1993). The Ninth Circuit has held that fair and just reasons for withdrawal include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Ortega-Ascanio,* 376 F.3d at 883.

If, as Showalter argues, the district court believed that it should apply the legal standard applicable to a motion for a new trial, the court presumably would have stated that the motion should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimental,* 654 F.2d 538, 545 (9th Cir. 1981). It did not do so.

The district court's analysis itself demonstrates that the court used the appropriate standard. The court followed *United States v. Garcia*, 401 F.3d 1008, 1010-11 (9th Cir. 2005), in which we considered the question of when a witness's declaration will constitute "newly discovered evidence" sufficient to justify the withdrawal of a defendant's guilty plea.

In *Garcia*, after pleading guilty to a charge of manufacture of methamphetamine and a firearm charge, the defendant moved to withdraw his guilty plea because he found a witness who stated in a declaration that the defendant did not live in the house where methamphetamine was manufactured, she did not believe the firearms found in the house belonged to the defendant, and she had never seen firearms in the defen-

dant's possession. *Id.* at 1009-10. We explained that a defendant claiming to have new evidence provides a "fair and just reason" for withdrawing his guilty plea if the evidence is both (1) newly discovered, and (2) plausibly could have motivated a reasonable person in the defendant's position to not plead guilty had he known about the evidence before pleading. *Id.* at 1011-12. We determined that the subject declaration constituted "newly discovered evidence" because the witness was unknown to the defendant when he entered his guilty plea. *Id.* at 1010 n.2. The declaration also directly contradicted the testimony of another witness, distancing the defendant from the house where firearms and drug paraphernalia were seized. *Id.* at 1010. The declaration, thus was evidence that could have "at least plausibly motivated a reasonable person in [the defendant's] position" not to have pleaded guilty had he known about it. *Id.*

**[9]** Applying *Garcia,* the district court in this case explained:

> In contrast [with *Garcia*], here [Showalter] knew each of the declarants before he pleaded guilty. Thus, he was also aware of the potential evidence they could supply through declarations before he pleaded guilty. Further, [Showalter] was fully aware that he could have not pleaded guilty and compelled these same witnesses to testify on his behalf at trial.

**[10]** The record supports the district court's reasoning. One declarant worked for Showalter as a construction worker, then a foreman, and finally a project manager. Showalter knew him before the government filed its criminal charge. Another declarant was a large investor who gave Showalter approximately $900,000. Showalter had met him three times before he made his investment. Showalter also knew the third declarant, an investor since 2003 who had a business relationship with Showalter for approximately three years.

Showalter does not dispute he knew of these three declarants before he pleaded guilty. However, he contends that the declarants were not available before he pleaded guilty because he could not compel them to testify favorably for him and he could not foresee that they would later come forward with exonerating testimony. The record does not support these contentions.

At Showalter's change of plea hearing, the district court advised him of his ability to compel these witnesses to testify, and all three of them stated their current testimony would be the same as it would have been before he pleaded guilty. Although Showalter attempted to rebut this evidence with statements in the declarations, the statements do not refute the notion that the declarants would have been willing to testify consistently with their declarations. The witnesses stated that they "only recently agreed to sign" the declarations and had not made a "commitment to sign" the declarations earlier. This does not constitute an admission that they were unavailable to Showalter earlier.

### 3.   *Reaching the Merits*

Showalter argues that, in denying his motion to withdraw his guilty plea, the district court improperly reached the merits of his proffered defense. He contends the district court's negative characterization of his position and the court's assertion of an improper motive for him moving to withdraw his guilty plea prove that the court actually ruled on the merits of his case. He bases his argument on the district court's use of phrases such as "investors *allegedly*," "defendant *contends*," "defendant *claims*," "defendant has *merely* shown," and "defendant's *mere* reevaluation of his tactical strength."

This language was used in the context of the district court's summary of the arguments presented by the parties, not an evaluation of the merits of the case or Showalter's defense. What Showalter calls "negative characterization" is actually

common language used by attorneys and the court to discuss legal claims. It would be difficult for a court to discuss a case without using words such as "allegedly," "contends," and "claims." As correctly stated by the government, "[t]he court's qualifying language was merely a method of recounting the facts and arguments as alleged or asserted by the parties without making unnecessary factual findings."

### 4. *United States v. McTiernan*

On October 21, 2008, after Showalter filed his opening brief in this appeal, but before the government filed its answering brief, we issued an opinion in *United States v. McTiernan,* 546 F.3d 1160 (9th Cir. 2008). Showalter devoted his entire reply brief to arguing that *McTiernan* is dispositive of this appeal in his favor. We disagree.

In *McTiernan*, we stated that bad legal advice can constitute a fair and just reason justifying withdrawal of a defendant's guilty plea. *See McTiernan,* 546 F.3d at 1167 ("[e]rroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal" (citing *Davis,* 428 F.3d at 806)). We remanded the case to the district court for an evidentiary hearing because the declaration submitted concerning whether McTiernan was advised properly lacked sufficient clarity and precision that would allow a conclusion that the defendant was properly and adequately advised. *Id.* at 1168.

While a factual question remained in *McTiernan* as to whether the defendant in fact had been adequately advised of his right to bring a motion to suppress before he pleaded guilty, no factual question exists in this case. The issue before this court is whether the district court abused its discretion when it determined the declarations proffered by Showalter did not constitute "newly discovered evidence" under *Garcia.* 401 F.3d at 1008. *McTiernan* does not overrule or change

*Garcia,* the case upon which the district court primarily relied in its decision.

## B.   *Sentencing*

We next consider whether the district court abused its discretion in sentencing Showalter to 151 months of imprisonment. In the plea agreement, Showalter stipulated that he: (1) owned High Park Investments which "took in over $15 million in investors['] money;" and (2) "victimized at least 10 people an[d] caused a loss of at least $1 million but not more than $20 million." The plea agreement contained a provision that allowed Showalter and the government to argue for sentence adjustments outside of the facts stipulated to in the plea agreement.

The probation office submitted a pre-sentence report ("PSR"). The PSR stated that Showalter victimized 117 investors. The basis for this figure was a phone conversation between a probation officer and the bankruptcy trustee of Showalter's now defunct business, High Park. The PSR also included as an attachment a list of victims that showed a "loss amount" next to each victim's name. The total amount of the loss was $15,418,500. The PSR also included narratives describing the circumstances of seventeen of the victims.

Showalter objected to the PSR's statements that there were fifty or more victims and that the loss amount was in excess of $7 million, claiming that "the government has not produced any of the documents upon which the PSR's loss calculation is based."

Federal Rule of Criminal Procedure 32(i)(3)(A) provides that at sentencing, the court "may accept any undisputed portion of the presentence report as a finding of fact." Additionally, Rule 32(f) states that "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objection." Although Showalter submitted no objections to

the original PSR, he filed timely objections to the addendum to the PSR, containing the list of alleged victims, by filing "Additional Materials for Sentencing and for Bail Pending Appeal" on February 27, 2008. Specifically, Showalter contended that "there is insufficient evidence for [the district court] to impose four levels, rather than two for the number of victims." The factual allegations of the PSR regarding the number of victims and loss calculation thus were disputed.

Solely on the basis of the factual statements in the PSR, the district court imposed two sentence enhancements that are at issue in this appeal. The district court imposed: (1) a 4-level enhancement for "50 or more victims;" and (2) a 20-level enhancement for a loss of "more than $7 Million." *See* U.S.S.G. § 2B1.1(b)(1)(K) (20-level enhancement for loss of more than $7 Million); U.S.S.G. § 2B1.1(b)(2)(B) (4-level enhancement if offense involved "50 or more victims"). As a result of these enhancements, the district court determined that Showalter's total offense level was 33 and his Criminal History Category was 1. These determinations resulted in an advisory guideline range of 135-168 months imprisonment. The district court's sentence of 151 months was in the middle of this range.

We review for clear error a district court's factual findings supporting a sentence enhancement. *United States v. Zolp*, 479 F.3d 715, 718-19 (9th Cir. 2007). "If the district court makes a material miscalculation in the advisory guidelines range, even after *Booker,* we must vacate the sentence and remand for resentencing." *Zolp*, 479 F.3d at 721 (citing *United States v. Cantrell,* 433 F.3d 1269, 1280 (9th Cir. 2006)).

**[11]** "[T]he government bears the burden of proving, by a preponderance of the evidence, the facts necessary to enhance a defendant's offense level under the Guidelines." *United States v. Burnett*, 16 F.3d 358, 361 (9th Cir. 1994). District courts have broad discretion to "consider information relevant

to the sentencing determination . . . provided that the information has sufficient indicia of reliability to support its probable accuracy.' " *United States v. Berry,* 258 F.3d 971, 976 (9th Cir. 2001) (quoting USSG § 6A1.3(a)). Additionally, "the district court may rely on undisputed statements in the PSR at sentencing . . . . However, when a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute, and the government bears the burden of proof . . . . The court may not simply rely on the factual statements in the PSR." *United States v. Ameline*, 409 F.3d 1073, 1085-86 (9th Cir. 2005) (en banc); *see also* Fed. R. Crim. P. 32(i)(3)(B) (requiring court to rule on disputed matters at sentencing).

**[12]** The Guidelines provide that a sentence enhancement under § 2B1.1(b)(1) (enhancement for "monetary loss"), may be based on an "estimate" of the monetary loss. U.S.S.G. § 2B1.1, cmt. n.3(C). The Guidelines do not, however, allow a district court to "estimate" the number of victims to enhance a sentence under § 2B1.1(b)(2). *See* U.S.S.G. § 2B1.1(b)(2).

Relying upon *on Zolp*, the government argues that it need not "prove every victim." However, *Zolp* does not stand for the proposition that the number of victims may be estimated. While *Zolp* supports the government's argument that the enhancement for the estimated monetary loss under § 2B1.1(b)(1) was reasonable, *Zolp* does not address sentence enhancements for the number of victims under § 2B1.1(b)(2).

In allowing estimates of monetary loss, the Guidelines note expressly the difficulty of calculating monetary loss accurately and specifically list various factors that sentencing courts should take into consideration when estimating monetary loss. *See* U.S.S.G. § 2B1.1, cmt. n.3(C)(i-v). The difficulties inherent in calculating monetary loss, however, do not exist when determining the number of victims.

1.  *The District Court Erred in Determining There Were 50 Or More Victims*

**[13]** The district court erred in applying a 4-level enhancement for "50 or more victims," rather than applying the two-level enhancement for "10 or more victims." The court's additional two-level enhancement raised the advisory guideline range from 108-135 months to 135-168 months and resulted in a sentence that was at least sixteen months longer than should have been imposed. Because the district court imposed a sentence at the mid-point of an inappropriate Guideline range, we may not presume that it would have imposed the same sentence had the Guideline range been determined correctly.

**[14]** Although Showalter stipulated in his plea agreement that there were at least 10 victims, he objected to the PSR's statement that there were fifty or more victims. After Showalter objected to this statement, the district court was obligated to do more than simply adopt it. *Ameline*, 409 F.3d at 1086. Rather, Showalter's timely objection to the PSR required the government to produce at least *some* evidence to support its contention that there were fifty or more victims. *See Burnett*, 16 F.3d at 361 ("[T]he government bears the burden of proving, by a preponderance of the evidence, the facts necessary to enhance a defendant's offense level under the Guidelines."). The district court did not require the government to meet this burden.

**[15]** The record reveals that the only basis for the district court's finding that there were fifty or more victims was: (1) the PSR's statement regarding a phone call to the bankruptcy trustee; and (2) the list of victims attached to the PSR. The district court did hear from roughly a dozen victims at Showalter's sentencing. However, this testimony was insufficient to establish that there were fifty or more victims.

**[16]** The PSR did not provide any details of the probation officer's conversation with the bankruptcy trustee, nor did it

offer any explanation of how the bankruptcy trustee determined the total number of victims or indicate the source of the list of victims attached to the PSR. It is impossible to determine from the record whether the probation office ever inquired into the accuracy of the victim list or of the individual dollar amounts associated with the names on the list. Essentially, it appears that the probation office said there were 117 victims because the bankruptcy trustee said so, without any explanation as to how the trustee came up with this number. This does not justify a conclusion that the government met its burden of establishing that there were "50 or more victims." Accordingly, while Showalter's stipulation in the plea agreement that there were "10 or more victims" provided a sufficient basis for a 2-level enhancement, there was insufficient evidence to support a 4-level enhancement for "50 or more victims."

> 2. *The District Court Committed No Error In Finding The Loss More Than $7 Million*

**[17]** A sentence enhancement for the amount of loss under § 2B1.1(b)(1) involves a fundamentally different calculation than a sentence enhancement for the number of victims under § 2B1.1(b)(2). The commentary to the Guidelines allows the district court to "estimate" the monetary loss. U.S.S.G. § 2B1.1, cmt. n.3(C). In calculating monetary loss under the Guidelines, the court may consider both "actual loss" and "intended loss." U.S.S.G. § 2B1.1, cmt. n.3(A). The Guidelines, however, define "victim," in relevant part, to include only those people who suffered part of the "*actual loss*" determined under U.S.S.G. § 2B 1.1(b)(1). *See* U.S.S.G. 2B 1.1 cmt. n.1. (emphasis added).

**[18]** The court's estimate of monetary loss can be based on "[t]he approximate number of victims multiplied by the average loss to each victim" or "[m]ore general factors, such as the scope and duration of the offense and revenues generated by similar operations." U.S.S.G. § 2B1.1, cmt. n.3(C)(iii) &

(v). Moreover, the calculation of monetary loss may be based on the amount put at risk or the actual loss. *United States v. Munoz*, 233 F.3d 1117, 1126 (9th Cir. 2000). Thus, a district court has a number of permissible methods for determining monetary loss, and "need not make its loss calculation with absolute precision." *Zolp*, 479 F.3d at 719.

**[19]** Given the number of permissible methods for estimating loss, the district court's loss estimate of "more than $7 million" was not clearly erroneous. Showalter acknowledged in his plea agreement that High Park "took in over $15 million in investors['] money" and that he "caused a loss of at least $1 million but not more than $20 million." These admissions provided a sufficient basis for a finding that the "actual" or "intended" losses exceeded $7 million.

## III.   *Conclusion*

**[20]** We affirm the denial of Showalter's motion to withdraw his guilty plea, but we vacate the sentence imposed upon him and remand for resentencing.

**AFFIRMED IN PART; SENTENCE VACATED and REMANDED FOR RESENTENCING.**