**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50517 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-01076-PA-3 |
| v. | |
| ROBERT JENNINGS, AKA Seal C, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50191 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-01076-PA-1 |
| v. | |
| HENRY ULIOMEREYON JONES, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted December 6, 2010
Pasadena, California

_____

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: B. FLETCHER, BERZON, and CALLAHAN, Circuit Judges.

Robert Jennings and Henry Jones appeal from their convictions and sentences for mail fraud, wire fraud, and securities fraud. Jennings and Jones challenge the good faith instruction given to the jury. Jennings also challenges the sufficiency of the evidence to support his conviction for securities fraud under Count 15, his sentence, and the amount of restitution. We affirm.

Jennings and Jones contend on appeal that the good faith instruction misled the jury into thinking that it only had to "consider" their good faith, failed to inform the jury that good faith was a complete defense, and failed to indicate that the government had the burden of proving that they lacked good faith. Because Jennings and Jones withdrew their objections to the good faith instruction, however, we review only for plain error. *See United States v. Romm*, 455 F.3d 990, 1003 (9th Cir. 2006).

In this case, the judge instructed the jury that "[a] defendant's good faith in the truth of the misrepresentations . . . *may* be considered by you in determining whether he acted with an intent to defraud." (emphasis added). This court approved a similar instruction in *United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir. 2004). Consequently, we cannot say that the instruction was clearly erroneous.

2

Jennings also challenges his conviction on Count 15 on the grounds of insufficient evidence. Because Jennings failed to object at trial, the plain error standard applies. *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004). Examining the evidence as a whole, the jury could have reasonably found that Jennings was guilty of securities fraud for actions taken in November 2002 in connection with an investment regarding the coal mines, the purported gold transaction, and the African country of the Seychelles. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010).

The evidence showed that Jennings was heavily involved in the coal mining ventures and the solicitation conference calls from the beginning. Further, he was the President of both H&J Energy and Tri Energy and had responsibility for handling the company bank accounts. He provided information to investors on the progress of the mines and the expected returns – information that was not realistic in light of the actual production and the equipment problems. Moreover, the information was also not realistic in light of the amounts of money flowing in and out of the company bank accounts that Jennings handled. In addition, Jennings had a close relationship with Schubert, the mine manager who falsified mine documents, made misrepresentations about the mines and the gold transaction, and eventually went to jail. Jennings and Schubert's close relationship supports a jury

3

finding that Jennings knew about the fraud, but continued to make positive representations to investors about the workings of the mines and the expected returns, knowing they had no basis in fact.

Also, Jennings helped induce the November 2002 investment at issue in Count 15 by talking about an impossible gold transaction, which the jury could have determined Jennings *knew* did not exist. Investor Roger Sohn testified that based on his conversations with Jennings and Simburg, he thought his investment involved securing the release of $56 million from the Seychelles, and that some of the money also would be used to fund coal mines. Then at some point, the Seychelles transaction "faded away" and was replaced by the "gold transaction," brokered by Jones. Based on the evidence at trial, the supposed magnitude of the gold transaction was so outrageous that if the transaction had been real it would have caused the entire gold market to collapse. The fact that Jennings – the president of the companies, who handled the bank accounts – helped to perpetuate

4

*such* an outlandish story to solicit more money supports a jury finding that Jennings had the requisite knowledge for fraud.[1]

Later, in 2004, Jennings vouched for Jones's character to investors, saying that he "knew the facts" on Jones, who was his "joint-venture partner." Jennings did not specify when he learned these "facts," and the jury reasonably could infer that because of Jennings's longstanding and symbiotic business relationship with Jones, he knew the "facts" on him early on, and thus knew all about Jones's use of investor funds for music business and personal expenses. Given that Jones was supposedly brokering the November 2002 investment, Jennings's knowledge of "the facts" on Jones suggests that Jennings the requisite knowledge and intent for fraud regarding this investment, which was at the heart of Count 15.

Thus, there was sufficient evidence for the jury to convict Jennings on Count 15 based on (1) specific, direct evidence of fraud from *after* 2002, in conjunction with (2) evidence of Jennings's heavy involvement in the mining venture, oversight of the bank accounts, solicitation of money, and close association with

_____

[1] Also, Jennings told Mrs. Lord, an investor, a story about "bizarre, crazy circumstances" involving a Dubai prince held captive, which resulted in a $10,000 investment from the Lords in 2003, with a promised 2-to-1 return that never happened. Although this story was told in 2003, *after* the November 2002 investment at issue in Count 15, the jury could fairly infer that it showed Jennings's continuing practice of stretching the truth to obtain investments.

fraudulent characters from *before* and *during* 2002. The scheme at issue in this case was continuing and much of the evidence was overlapping; the jury reasonably could make connections between one time period and another when drawing conclusions about Jennings's intent and actions.

Further, Jennings challenges his sentence on the grounds that the district court did not reasonably consider the factors set forth in 18 U.S.C. § 3553 and because the sentence was substantively unreasonable. The district court considered all of Jennings's non-frivolous sentencing arguments and gave an adequate explanation for imposing a below-Guidelines sentence of 144 months. *See United States v. Ressam*, 593 F.3d 1095, 1118-19 (9th Cir. 2010); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Moreover, the sentence was not substantively unreasonable in light of the evidence at trial. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Despite having many opportunities to put an end to the fraud, Jennings spent years soliciting the investments, and even when confronted with the truth, he continued to lie to the investors and take advantage of their faith. Even though Jennings received little of the proceeds in relation to his co-defendants, the district court did not abuse its discretion in finding that the co-defendants were all equally culpable.

6

Finally, Jennings argues that the district court erred in calculating the amount of loss and restitution. "A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution is reviewed de novo." *United States v. Gordon*, 393 F.3d 1044, 1051 (9th Cir. 2004) (quotations and citations omitted); *see United States v. Showalter*, 569 F.3d 1150, 1160-61 (9th Cir. 2009). Here, Jennings argues that he should have been treated differently from his co-defendants and that he could not have reasonably foreseen this level of harm. The record reflects, however, that the district court considered the entirety of the evidence at trial, including the government's financial analysis as to fraud loss amounts, and considered Jennings's arguments at sentencing. *See United States v. Treadwell*, 593 F.3d 990, 1003 (9th Cir. 2010). The district court's determinations that the fraud loss was reasonably foreseeable to Jennings, and that he is responsible for the entire amount of restitution, do not constitute an abuse of discretion. *See id.*

For the foregoing reasons, Jennings's conviction and sentence, as well as the restitution order entered against him, are AFFIRMED, and Jones's conviction is AFFIRMED.

7

*United States v. Jennings*, 08-50517
*United States v. Jones*, 09-50191

BERZON, J., concurring in part and dissenting in part, with whom B. FLETCHER, J., joins except as to the penultimate paragraph regarding Count 15 against Jennings:

Good faith is a complete defense to the wire, mail, and security fraud offenses at issue here. If a fraud defendant actually believes what he says, then saying it can't be a crime under these statutes. This is only logical: intent to defraud is an element of each offense. If a defendant had a good-faith belief in the truthfulness of his representations, then he could not have intended to defraud anyone by making them.

In this case, the judge instructed the jury that "[a] defendant's good faith belief in the truth of the misrepresentations . . . *may* be considered by you in determining whether he acted with an intent to defraud." (Emphasis added). This statement of the law, of course, is technically correct. But it's also misleading. A defendant's good faith not only may be considered by a jury; it *must* be considered by a jury. If the jury determines that the defendant acted in good faith, it must acquit him. *See, e.g.*, *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999).

Our law entitles defendants to more than "technically correct" instructions. Jurors are not jurists, and they should not be expected to parse an instruction in the

same way that a court parses a statute. As we have repeatedly stated, "[t]he relevant inquiry is whether the instructions as a whole are *misleading* or *inadequate to guide the jury's deliberation.*" *United States v. Redlightning*, 624 F.3d 1090, 1122 (9th Cir. 2010) (emphases altered and quotation omitted).

Unfortunately, in *United States v. Shipsey*, 363 F.3d 962 (9th Cir. 2004), this Court approved an instruction on good faith that was close to identical to the one here. *See id.* at 967; *see also* Ninth Circuit Manual of Model Jury Instructions -- Criminal § 3.16 cmt. (2010).[1] Though I believe *Shipsey* was wrong on this point, I also recognize that it is controlling.

This Court should revisit *Shipsey*.[2] But I don't believe this case should be the vehicle for doing so. I agree with the Court that the instruction here is subject to review only for plain error, *see United States v. Delgado*, 357 F.3d 1061, 1065 (9th Cir. 2004), and so we would reverse only if the error were of a sufficient magnitude to meet that standard. *See id.* Given the ample evidence of defendants' bad faith as to all but one of the counts, I would say the error here was harmless.

---

[1] *United States v. Molinaro*, 11 F.3d 853 (9th Cir. 1993), also approved a similar instruction, but arguably did not do so in face of a challenge to the instruction's use of the word "may." *See id.* at 863.

[2] In the meantime, the drafters of our model instructions might revisit the commentary to their model intent to defraud instruction. The *Shipsey* instruction may be legally adequate, but district judges who want to do better should consider instructing juries more clearly that good faith is a complete defense.

As to the remaining count, Count 15 against Jennings, I would reverse even if I had no reservations about the instruction. I disagree with the majority's conclusion that there was sufficient evidence to support the conviction on that count.

For the foregoing reasons, I respectfully concur in part and dissent in part.