**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

EDWARD ALAN GARCIA,
          *Defendant-Appellant.*

No. 04-30172

D.C. No.
CR-03-00125-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
February 14, 2005—Seattle, Washington

Filed March 16, 2005

Before: Betty B. Fletcher, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

Robert W. Goldsmith, Seattle, Washington, for the defendant-appellant.

Bruce F. Miyake, Assistant U.S. Attorney, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

Defendant-appellant Edward Alan Garcia ("Garcia") appeals the district court's denial of his motion to withdraw his guilty plea to a charge of manufacture of methamphetamine and a related firearm charge. After his plea was accepted but before he was sentenced, Garcia moved to withdraw his plea on the basis of new evidence and an intervening change in the law. Because the newly discovered evidence constituted a "fair and just reason" to permit him to withdraw the plea prior to sentencing, we vacate the judgment of conviction, set aside the guilty plea, and remand for further proceedings.

## I. BACKGROUND

In August 2002, a confidential informant told King County, Washington, local law enforcement officers that Garcia was

involved in selling and manufacturing methamphetamine at his residence. The informant told detectives that he had been present when Garcia cooked methamphetamine in the residence, that Garcia had three loaded firearms, and that Garcia often answered the door with a loaded shotgun.

On September 6, 2002, officers executed a search warrant at Garcia's alleged residence in Renton, Washington. When the officers arrived, Garcia and two women were in the downstairs portion of the house, and two other individuals — including the owner of the house, Carol Coley — were in the upstairs portion. When Garcia and two women emerged from the downstairs portion of the house, an officer shouted, "Police with a search warrant!" and Garcia and his companions ran back into the house. One of the women then came out and told the officers that Garcia and the other woman remained inside with two shotguns. A SWAT team arrived, coaxed Garcia and the other woman out of the house, and took them into custody.

Officers found a bag of white powder, a scale, and a notebook in the upstairs portion of the house. In the downstairs area, officers found three firearms. A methamphetamine lab and related components were found in the downstairs area and garage. Coley told officers that she lived in the upstairs portion of the house and that she rented the downstairs portion to Garcia, whom she claimed had lived there for the previous month-and-a-half to two months and was involved with drugs and guns. Coley also admitted to being a user of methamphetamine.

Garcia pled guilty to one count of manufacture of methamphetamine, 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking offence, 18 U.S.C. § 924(c), in exchange for the government's dismissal of two other firearm charges and a combined sentence of 120 months. The plea agreement stipulated that either party could withdraw if a different sentence was imposed.

At his plea colloquy before the magistrate judge, Garcia explained, through counsel, that he did not concede his guilt, but rather was entering into the agreement only for the purpose of limiting his sentencing exposure, which (by the government's calculation) was 40 years to life for all four counts. The government, while formally refusing to accept an "*Alford* plea,"[1] nonetheless agreed to allow Garcia to stipulate that he was admitting to facts "for the purposes of this plea." When asked to confirm the government's statement of the facts of the offenses to which he was pleading, Garcia responded: "For the purposes of this plea I agree." Garcia then confirmed that he was waiving his right to challenge the "independent basis in fact" for the elements of the offense, and that his decision to plead guilty was knowing, informed, and voluntary. Finally, when the judge asked him for his plea, Garcia responded, "For the purposes of the plea I plead guilty."

Five months after entering the plea — but before he was sentenced — Garcia moved to withdraw his guilty plea based on an intervening Ninth Circuit decision, *United States v. Wenner*, 351 F.3d 969 (9th Cir. 2003), which Garcia argued would have operated to disqualify him as a "career offender" under the Federal Sentencing Guidelines. Garcia argued that he was entitled to withdraw his plea because he and the government had, at the time of the plea, been operating under a "mutual mistake about the application of the law."

Several weeks later, Garcia supplemented his motion with an additional reason in support of withdrawal: new evidence from a newly discovered witness, Crystal McClurg.[2]

---

[1] In *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970), the Supreme Court held that a guilty plea can be constitutionally valid in spite of the defendant's professions of innocence, at least where there is a factual basis for the plea and the plea is voluntary, knowing, and intelligent.

[2] This witness was unknown to the defense at the time of the plea apparently because the affidavit in support of the search warrant mentioned only that "Crystal" (with no surname given) was living at the residence where Garcia was arrested.

McClurg's declaration directly contradicts Carol Coley's statement to the authorities. According to McClurg, who had lived at the house until four days before the police executed the search warrant, Garcia never lived at the house, but merely "would come over occasionally and hang out." Though McClurg no longer lived at the house when Garcia was arrested there, she noted that the day before she moved out, "a man named Mitch and his friend moved into the downstairs room where the three firearms were seized." Additionally, McClurg declared that she recognized two of the seized firearms, which she thought belonged to Carol Coley's husband and which she had never seen in Garcia's possession.

The district court denied Garcia's motion to withdraw his plea. Though the district court ruled after Garcia supplemented the motion with his claim of new evidence, the court's initial ruling considered only Garcia's change-in-law argument. Applying a four-part test borrowed from out of circuit, the district court examined the plausibility of the reasons for the withdrawal, the timing of the motion, whether Garcia had asserted his innocence, and whether the original plea was involuntary in violation of the standards set forth in Federal Rule of Criminal Procedure 11. The district court found that the plausibility of the reason for withdrawal weighed in Garcia's favor, although the district court found it unclear whether *Wenner* would have affected Garcia's status as a career offender. However, the other three factors, in the court's view, weighed against permitting withdrawal: the court faulted Garcia for waiting two months after the *Wenner* decision before filing his withdrawal motion; the court found that Garcia had not actually claimed innocence; and (most importantly, in the court's view) the court determined that Garcia had entered his initial plea voluntarily, intelligently, and knowingly. The court therefore denied the motion.

Citing the court's failure to address the McClurg declaration, Garcia moved for reconsideration. The court denied the motion, explaining that Garcia's new evidence did not change

his previous failure to claim innocence or the voluntariness of the initial plea.

The district court sentenced Garcia to 114 months in prison, five years of supervised release, and a $200 penalty assessment. Garcia now appeals, and we have jurisdiction under 28 U.S.C. § 1291.

## II.  ANALYSIS

Denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). A court abuses its discretion when it rests its decision on an inaccurate view of the law. *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1085-86 (9th Cir. 2003).

**[1]** A defendant may withdraw a guilty plea after its acceptance but before sentencing if the defendant shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). As we have recently explained, the "fair and just reason" standard "is applied liberally." *Ortega-Ascanio*, 376 F.3d at 883 (citation omitted). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, *newly discovered evidence*, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* (emphasis added).

**[2]** We consider first whether Garcia's claim of newly discovered evidence, specifically the McClurg declaration, provides a "fair and just reason" for withdrawal. While newly discovered evidence wholly unrelated to a defendant's case would surely not entitle him to withdraw his guilty plea, the generous "fair and just reason" standard does not require that the defendant show that the new evidence exonerates him or that there is a reasonable probability he would not have been convicted had the case gone to trial. *See United States v. Morgan*, 567 F.2d 479, 493 (D.C. Cir. 1977) ("Where the accused

seeks to withdraw his plea of guilty before sentencing, on the ground that he has a defense to the charge, the District Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." (citation omitted)).

**[3]** Crystal McClurg's declaration is important both because it directly contradicts part of Carol Coley's statement against Garcia and because it distances Garcia from the house where the firearms and drug paraphernalia were seized. The McClurg declaration thus raises new questions about Garcia's involvement in the illegal activity at the house. Had Garcia known about this evidence earlier, he may well have changed his mind about whether to plead guilty. We need not hypothesize about the ripple effect of the new evidence or speculate about its potential effect on a jury. It is sufficient that this evidence was relevant evidence in Garcia's favor that could have at least plausibly motivated a reasonable person in Garcia's position not to have pled guilty had he known about the evidence prior to pleading. McClurg's statement therefore constitutes newly discovered evidence that is sufficient to justify the withdrawal of Garcia's plea under the "fair and just reason" standard.[3]

The district court's denial of Garcia's motion relied on three faulty premises. First, the district court cited the fact that Garcia's plea was voluntary, knowing, and intelligent as "the most important factor" to the court's determination that Garcia should not be permitted to withdraw his plea. This treatment is inconsistent with our precedent.[4]

---

[3] Because Garcia was entitled to withdraw his plea on the basis of newly discovered evidence, we need not consider Garcia's alternative argument that the intervening change in sentencing law is also a "fair and just reason" for permitting withdrawal of the plea.

[4] Out of fairness to the district court, we observe that we decided the key case on this point several months *after* the district court ruled on Garcia's motion.

**[4]** It makes perfect sense that a defendant's showing that his plea was *not* voluntary would be "the most important factor" *supporting* withdrawal, as a plea that is involuntary, unintelligent, or uninformed is an invalid plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). But while a plea's invalidity qualifies as a "fair and just reason" for permitting withdrawal, *see, e.g.*, *United States v. Toothman*, 137 F.3d 1393, 1400-01 (9th Cir. 1998), it is not a prerequisite to withdrawal. In the recent case of *United States v. Ortega-Ascanio*, we squarely rejected the proposition that the fact that a plea is voluntary, knowing, and intelligent forecloses an attempt to withdraw it prior to sentencing. *See* 376 F.3d at 884. We concluded that, on "a fair reading of the broad language" of Rule 11(d)(2)(B), the "fair and just reason" standard is simply more generous than the standard for determining whether a plea is invalid. *Id.* Accordingly, the fact that a plea was voluntary, knowing, and intelligent cannot count against a defendant's attempt to withdraw it prior to sentencing, unless the defendant's *only* asserted "fair and just reason" for withdrawing the plea is lack of voluntariness itself. To conclude otherwise would render a motion to withdraw a plea prior to sentencing "nothing more than an expedited hearing on a challenge to the voluntariness of the plea." *Id.*

**[5]** The second difficulty with the district court's order is its consideration of Garcia's supposed failure to claim innocence as a factor weighing against Garcia's motion to withdraw his plea. Setting aside the question of whether Garcia's statements at his plea colloquy — including his protestations that he was pleading guilty only because he feared an exorbitant sentence — were, in the words of the district court, "far from a claim of innocence," we conclude that a defendant's failure to proclaim his innocence should not count against him when he seeks to withdraw his plea under the "fair and just reason" standard.

**[6]** Like the voluntariness of the plea, a defendant's claim of innocence can clearly be considered in *support* of his

motion to withdraw a plea: for example, we have recognized a claim of legal innocence as a "fair and just" reason for withdrawal of a plea. *See Ortega-Ascanio*, 376 F.3d at 883, 887. But finding that a defendant's failure to claim innocence weighs *against* his motion to withdraw runs contrary to the language of the "fair and just reason" standard. The standard asks whether the defendant has presented a "fair and just reason" for withdrawal, not whether the original plea was likely erroneous. Though many legitimate reasons for withdrawal relate to a defendant's legal or factual innocence, some defendants may have valid reasons for withdrawal that have nothing to do with innocence. For example, newly discovered evidence might bolster a defendant's defense, partial defense or other mitigating circumstance; these are perfectly legitimate reasons to withdraw a plea, regardless of whether the defendant has asserted his innocence. *See, e.g.*, *Morgan*, 567 F.2d at 493 (holding that the district court abused its discretion when it refused to allow a defendant to withdraw his guilty plea under the "fair and just reason" standard on the basis of new evidence bolstering an insanity defense). Therefore, even assuming the district court's characterization of Garcia's plea colloquy is correct, the court should not have held against him his failure to assert his innocence.

**[7]** The district court's final reason for denying Garcia's motion was his delay in filing it.[5] We have looked to a defendant's delay in moving to withdraw a plea as a barometer of the defendant's candor with the court about his reasons for withdrawal. *See, e.g.*, *Ortega-Ascanio*, 376 F.3d at 886 ("The delay alone does not suggest that [defendant's given reason] was not the reason for [his] motion to withdraw . . . ."); *United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003) (concluding that defendant's two-year delay in moving to withdraw his plea weighed against permitting withdrawal

---

[5]Garcia filed his motion two months after the publication of the *Wenner* decision. It is not clear from the record when he became aware of Crystal McClurg.

because it "suggest[ed] that the withdrawal was intended to serve a different purpose" than the defendant claimed (citation and internal quotation marks omitted)); *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995) (concluding that the district court did not abuse its discretion in finding that the defendant's delay cast doubt upon the sincerity of his stated reason for withdrawal). But we have never held that delay standing alone militates against permitting withdrawal of a plea. Delay itself does not make an otherwise valid reason for withdrawal any less "fair" or "just." A defendant's delay may be attributable to factors — such as continuances of sentencing, *see Ortega-Ascanio*, 376 F.3d at 886, or even practical matters such as the amount of time it takes a busy attorney competently to research and prepare a motion to withdraw a plea — that are entirely unrelated to the legitimacy or the sincerity of the defendant's reasons for wishing to withdraw his plea.

**[8]** Here, the district court's first order counted the mere fact of Garcia's delay against him without considering whether the delay suggested insincerity or duplicity on Garcia's part.[6] There is no suggestion or indication on the record that Garcia's reasons for withdrawal were not bona fide, or that the government suffered great prejudice as a result of Garcia's delay. Therefore the amount of time it took him to file his motion to withdraw his plea should not have been counted against him.

## III.   CONCLUSION

**[9]** The evaluation of a pre-sentence motion to withdraw a plea turns on whether the defendant has shown "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P.

---

[6]In its second order, the court simply explained — in response to Garcia's objection to the court's consideration of the amount of time Garcia took to file his motion — that denial of the motion would be justified based on the voluntariness and innocence factors alone.

11(d)(2)(B). Garcia's newly discovered evidence — the McClurg declaration — constituted such a reason. Instead of focusing on the "fair and just reason" inquiry, the district court improperly considered the voluntariness of Garcia's plea, his supposed failure to claim innocence, and the timing of the motion, as reasons to deny Garcia's motion to withdraw his plea. This was an abuse of discretion. We vacate the judgment of conviction, set aside the guilty plea, and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**