**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

JOSHUA GIBRAN MAYWEATHER,
   *Defendant-Appellant.*

No. 08-50449

D.C. No.
2:08-CR-00259-
JFW-1

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
May 5, 2010—Pasadena, California

Filed September 27, 2010
Amended December 29, 2010

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and Frederic Block, Senior District Judge.*

Opinion by Judge Block

---

*The Honorable Frederic Block, Senior United States District Judge for
the Eastern District of New York, sitting by designation.

20741

**COUNSEL**

George S. Cardona, Acting United States Attorney for the Central District of California, by Christine C. Ewell and Gregory A. Lesser, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Ethan A. Balogh, Coleman & Balogh LLP, San Francisco, California, for the defendant-appellant.

**ORDER**

I

The opinion filed in this case on September 27, 2010, slip op. 16511, and appearing at 623 F.3d 762 (9th Cir. 2010), is amended as follows:

On Slip Opinion page 16524, lines 22-24, replace <Thus, unlike McTiernan, nothing arguably prevented Mayweather from raising the suppression issue before the court prior to pleading.> with <Thus, unlike McTiernan, Mayweather's plea did not result from his lack of knowledge about the suppression issue.>

On Slip Opinion page 16524, line 24, insert a paragraph break after the amended sentence ending with <suppression issue.>.

On Slip Opinion page 16524, line 24, insert a new sentence after the new paragraph break: <Certainly, the district court gave Mayweather an opportunity to voice his displeasure with Barnwell's failure to file a suppression motion.>

On Slip Opinion page 16526, lines 12-13, replace <The record is not developed as to what advice Barnwell actually provided.> with <The record is not developed as to what advice Barnwell gave Mayweather, why Barnwell did not file a suppression motion, and what would have happened had he done so.>.

II

The panel has unanimously voted to deny the petition for rehearing. Judges O'Scannlain and Tallman have voted to deny the petition for rehearing en banc, and Judge Block has so recommended. The full court has been advised of the petition for rehearing en banc, and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No subsequent petitions for rehearing or for rehearing en banc will be considered.

---

**OPINION**

BLOCK, Senior District Judge:

Defendant-Appellant Joshua Mayweather ("Mayweather") appeals the district court's judgment sentencing him principally to 60 months' imprisonment following his guilty plea to possessing a firearm in furtherance of a drug trafficking crime. He argues (1) that the district court erred in not allowing him to withdraw his plea, and (2) that his trial counsel

provided ineffective assistance. We affirm, and write princi-
pally to address the effect of *United States v. McTiernan*, 546
F.3d 1160 (9th Cir. 2008), on Mayweather's first claim.

# I

## A.   Events Leading to Mayweather's Guilty Plea

On January 14, 2008, police responded to a silent alarm at
Mayweather's apartment in Los Angeles. Mayweather met the
officers at the door and refused to let them in to check the
alarm system. The officers entered, however, when someone
inside opened the door to leave.

While searching for the alarm panel, the officers smelled
marijuana and saw what appeared to be narcotics and drug
paraphernalia, as well as a shotgun. They called narcotics
detectives, who obtained a search warrant. In addition to the
items already observed, the ensuing search uncovered a sec-
ond firearm.

On February 28, 2008, Mayweather was indicted on two
counts of possessing controlled substances with intent to dis-
tribute, in violation of 21 U.S.C. § 841(a), and one count of
possessing the two firearms in furtherance of the drug traf-
ficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i). He
retained Richard Barnwell to represent him. Trial was sched-
uled for June 10, 2008, with pretrial motions due by May 20,
2008.

On May 15, 2008, Barnwell and the government filed a
joint stipulation requesting a continuance. In it, Barnwell rep-
resented, *inter alia*, that he had been "investigating a possible
suppression issue," and that his vacation plans prevented him
from completing his investigation by the May 20th deadline.
The district court summarily denied the request. No pretrial
motions were filed.

After returning from vacation, Barnwell received an offer from the government to drop the narcotics counts in exchange for a guilty plea on Count Three, the firearms count. On June 2, 2008, he informed the district court that he had reviewed the plea offer, but had not had time to discuss it with Mayweather. The district court granted a four-day continuance.

On June 6, 2008, Mayweather and Barnwell signed the plea agreement in open court. The district court then conducted an extensive colloquy pursuant to Federal Rule of Criminal Procedure 11. Mayweather acknowledged, under oath, that he understood the plea agreement, the charge he would be pleading guilty to, the rights he was forfeiting, and his sentencing exposure; in that last regard, the court had the government state the minimum and maximum potential sentences:

> The statutory maximum sentence the Court could impose for the violation of Title 18 United States Code Section 924(c), as charged in Count Three of the indictment is, life imprisonment[.]

> The statutory mandatory minimum sentence that the Court must impose for a violation of Title 18 United States Code Section 924(c), as charged in Count Three of the indictment is a five-year term of imprisonment, which must run consecutive to any other sentence of imprisonment.

Mayweather further averred that he was pleading guilty voluntarily, and not because of any threats or promises.

The court then asked for an offer of proof. The government represented that Mayweather "possessed [the firearms found in his apartment] during the time he possessed the controlled substances with the intent to deliver them to another person, and in part to protect himself while he possessed the controlled substances." In response, Mayweather admitted that "everything that [the prosecutor] said about [him] was true

and correct," and that he "did those acts charged in Count Three."

For his part, Barnwell stated that Mayweather was competent to plead guilty, and that his plea was made knowingly and voluntarily. He further stated—without contradiction from his client—that he had advised Mayweather "in extreme detail" regarding "the legality or admissibility of any statements, or confessions, or other evidence the government has against him." Accordingly, Barnwell told the court that Mayweather was not "pleading guilty because of any illegally obtained evidence," and that Barnwell had "explore[d] with [Mayweather] any possible defenses [he] may have."

Mayweather was not asked whether he had discussed possible suppression issues and defenses with Barnwell. The court did ask Mayweather, however, whether he had any questions. In response, Mayweather asked only for an explanation of a provision of the plea agreement preserving his right to bring a collateral attack "based on the claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable sentencing guidelines, sentencing statutes, or statutes of conviction." In addition, he pointed out an inconsistency in the police report regarding the location of the shotgun. Nevertheless, he affirmed that he was pleading guilty "because [he was], in fact, guilty."

At the conclusion of the proceeding, the district court accepted Mayweather's guilty plea. Sentencing was scheduled for August 18, 2008.

## B. Mayweather's Motions to Discharge Barnwell and Withdraw His Plea

On August 13, 2008, Mayweather moved, *pro se*, to discharge Barnwell. At oral argument on August 18th, Mayweather said that he intended to withdraw his plea because

Barnwell had forced him to plead guilty. Barnwell denied the accusation, stating that when presented with the decision whether to "fight this or . . . accept this deal," Mayweather told him to accept the plea offer.

Although the district court noted that Mayweather's claim of coercion was "contradicted by [his] statements to the . . . Court under oath when [it] took [his] plea," it did not otherwise comment on Mayweather's statement that he intended to withdraw his plea. It did, however, grant Mayweather's motion to discharge Barnwell, apparently in deference to Mayweather's wishes and Barnwell's representation that he did not think he could continue as Mayweather's counsel. New counsel was then appointed and the sentencing was adjourned.

Prior to sentencing, Mayweather moved, through new counsel, to withdraw his plea on the ground that he had been "coerced into the entry of the plea as a result of [Barnwell's] failure to prepare his defense, *including filing a motion to suppress the January 14, 2008 search and seizure of narcotics and firearms from his apartment*." (Emphasis added.) In addition, Mayweather argued that the plea was not knowingly made because Barnwell had "improperly advised [him] that his expected sentence was a *maximum* of five years not a *minimum* of five years." In an affidavit, Mayweather attested that the following events had led to his plea:

- Prior to the plea, Mayweather "made it very clear to Mr. Barnwell that [he] wanted to litigate [his] case, *including a motion to suppress the January 14, 2008 search of [his] apartment.*" (Emphasis added.) Barnwell told Mayweather that he would file such a motion.

- On June 6, 2008, Barnwell told Mayweather that he had to decide whether to accept the plea offer, advising Mayweather that "the maximum [he]

could receive was a term of imprisonment of five years."

- When Mayweather told Barnwell that he did not wish to accept the offer, Barnwell responded that he had to "choose between entering a guilty plea . . . or going to trial the following week."

- When Mayweather told Barnwell that he wanted to pursue the suppression issue, Barnwell responded "that he did not file the motion and that he had not prepared the case for trial."

The government opposed the motion, relying primarily on Mayweather's statements during the plea colloquy and an affidavit from Barnwell. In it, Barnwell offered a very different account:

- After a thorough investigation, he advised Mayweather that "a motion to suppress the search of his residence as illegal would most likely fail." He did not promise to file a suppression motion but, rather, to "support whatever decision" Mayweather made.

- Barnwell impressed upon Mayweather the need to make a quick decision whether to go to trial or accept a plea offer. The district court's denial of the stipulated request for a continuance "did not change the defense posture that a suppression motion would probably not succeed." However, the government told Barnwell that making such a motion "would definitely render the government's plea offer to [Mayweather] less favorable."

- Barnwell read the government's written plea offer to Mayweather in its entirety, "including the

statutory maximum of life imprisonment." Mayweather agreed to sign the plea agreement once certain changes were made.

- Barnwell discussed whether to accept the deal with Mayweather and his family on several occasions. "Such discussions always ended with his family and [Mayweather] wanting the deal."

- Barnwell did advise Mayweather on June 6, 2008, that the choices he faced were "pleading guilty . . . or going to trial the following week." Barnwell denied, however, telling Mayweather that he was not prepared for trial.

- At his presentence interview, Mayweather stated that his mother had coerced him to plead guilty.

## C.  The District Court's Decision

The district court held oral argument on October 6, 2008. Ruling from the bench, the court credited Barnwell's version of the facts, finding Mayweather's affidavit "absolutely not credible" and "in direct conflict with the statements [he] made to the Court under oath during the plea colloquy." It also "[found] important that [Mayweather had] never denied that he was guilty of the charges or claimed that he was innocent of the charges."

Turning to Mayweather's specific arguments, the court first addressed Barnwell's failure to file a suppression motion:

Any motion to suppress based upon the facts and the applicable law relating to the search of [Mayweather's] apartment, as set forth in the government's opposition, would have been frivolous. More importantly, Mr. Barnwell's declaration establishes that he thoroughly investigated the factual basis for such a

motion, including interviewing the officers and witnesses involved, and discussed the consequences of filing such a motion with government counsel.

With respect to sentencing exposure, the court stated that Mayweather's claim that Barnwell had misadvised him was "demonstrably false" based on Mayweather's representations that he had read and understood the plea agreement, "which clearly set[ ] forth the . . . the statutory minimum sentence of five years," and the government's repetition of his sentencing exposure at the plea proceeding.

Concluding, the district court found that Mayweather had "simply changed his mind about his plea" and "manufactured the reasons for his request to withdraw his plea." Accordingly, the court denied the motion because Mayweather had failed to establish a "fair and just" reason for withdrawing his guilty plea; it then imposed sentence.

## II

**[1]** Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." We review the denial of a motion to withdraw a plea for abuse of discretion. *See United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009). "A court abuses its discretion when it rests its decision on an inaccurate view of the law, or on a clearly erroneous finding of fact." *Id.* (citations and internal quotation marks omitted). However, we may affirm for any reason supported by the record. *See Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009).

**[2]** "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883

(9th Cir. 2004). "While the defendant is not permitted to withdraw his plea 'simply on a lark,' the 'fair and just standard' is generous and must be applied liberally." *McTiernan*, 546 F.3d at 1167 (quoting *United States v. Hyde*, 520 U.S. 670, 676-77 (1997)). Thus, "a defendant does *not* have to prove that his plea is invalid in order to establish a fair and just reason for withdrawal before sentencing." *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005); *see also United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005) ("[We have] squarely rejected the proposition that the fact that a plea is voluntary, knowing, and intelligent forecloses an attempt to withdraw it prior to sentencing."). Nor must the defendant "proclaim his innocence." *Garcia*, 401 F.3d at 1012.

**[3]** When the basis for withdrawal is erroneous or inadequate legal advice, the defendant's burden is simply to show that proper advice "could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty had he known about the [grounds for withdrawal] prior to pleading." *Id.* at 1011-12. The defendant need not show that a legal argument foregone as a result of incorrect or incomplete advice would have been "successful on its merits." *McTiernan*, 546 F.3d at 1168.

Mayweather argues that he had fair and just reasons to withdraw his plea because Barnwell (1) failed to pursue the suppression issue, and (2) incorrectly advised him that the statutory maximum was five years.

## A.   Failure to Pursue the Suppression Issue

**[4]** We applied the "fair and just" standard to a claim similar to Mayweather's in *McTiernan*, in which we rejected the district court's denial of a plea withdrawal motion based on defense counsel's alleged failure to pursue a suppression motion. Mayweather argues that *McTiernan*—decided two weeks after the district court's decision in this case— mandates reversal. We disagree.

In *McTiernan*, the defendant claimed "that he was never made aware by his counsel at any time prior to his plea of the potential basis for a suppression motion." 546 F.3d at 1167. Indeed, neither his written plea agreement, nor anyone who spoke during the Rule 11 plea proceeding, specifically addressed the suppression issue; all references to any defenses spoke only in generalities. Thus, in his plea agreement, McTiernan attested that "[m]y attorney has advised me . . . of possible defenses." *Id.* at 1163. At the plea proceeding, his attorney stated that "he had pursued potential defenses with McTiernan," and that he had advised "McTiernan concerning the legality or admissibility of any statements or confessions or other evidence the government had against McTiernan"; McTiernan confirmed that his attorney "had considered and advised [him] as to the existence of any possible defenses." *Id.* at 1164.

Nonetheless, we vacated the district court's order, finding unacceptable the court's reliance on a declaration by McTiernan's counsel—presented in connection with a post-plea, non-evidentiary hearing—that he had advised McTiernan "on the topic of possible suppression" of a wiretapped telephone conversation involving the defendant, as well as the court's belief that a suppression motion, had one been brought, would not have been successful. *See id.* at 1166. In that latter regard, we concluded that, under the circumstances, there was "nothing inherently implausible about the proposition that a reasonable person would not have pled and would instead have sought through discovery to establish an illicit motive for the taping." *Id.* at 1168. Accordingly, we remanded "to enable the district court, after a full evidentiary hearing, to determine whether McTiernan can establish a fair and just reason to withdraw his plea." *Id.*[1]

---

[1]On remand, McTiernan's renewed motion to withdraw, which the government did not oppose, was granted. *See United States v. McTiernan*, No. 06-CR-259 (C.D. Cal. Feb. 23, 2009) (minutes of status conference).

There are, to be sure, similarities between *McTiernan* and this case. In each, defense counsel stated at the plea proceeding that he had advised his client as to "the legality or admissibility" of any statements, confessions or other evidence. In each, the district court accepted the factual statements in counsel's post-plea affidavits without conducting an evidentiary hearing. In each, counsel's post-plea affidavit was not beyond reproach; it is unclear in this case how Barnwell could have honestly represented that he had thoroughly investigated the suppression issue when he had previously requested additional time to investigate immediately before leaving for vacation. Finally, in each, the district court inappropriately placed some reliance on the failure of the defendant to deny his guilt and assert his innocence, and passed upon the merits of the foregone suppression motion.

**[5]** But there is a fundamental and dispositive difference between *McTiernan* and this case; namely, whether, prior to pleading, the defendant was aware of the prospect of making a suppression motion. In *McTiernan*, there was a legitimate factual issue as to whether the defendant was advised of the potential suppression issue "at any time prior to his plea." 546 F.3d at 1167. Since the issue of the defendant's knowledge could not be resolved on the basis of his attorney's controverted post-plea affidavit, remand for an evidentiary hearing was required to resolve whether there may have been a fair and just reason to withdraw the plea.

**[6]** Here, by contrast, Mayweather supplied the requisite pre-plea knowledge in his post-plea affidavit by stating that he had "made it very clear to Mr. Barnwell that [he] wanted to litigate his case, *including a motion to suppress the January 14, 2008 search of [his] apartment*." (Emphasis added.) Thus, unlike McTiernan, Mayweather's plea did not result from his lack of knowledge about the suppression issue.

Certainly, the district court gave Mayweather an opportunity to voice his displeasure with Barnwell's failure to file a

suppression motion. The district court conducted a thorough Rule 11 proceeding, taking particular care to engage Mayweather and confirm his understanding of the proceeding. Moreover, Mayweather was an active participant, asking the court to explain that part of the plea agreement setting forth the bases for post-plea collateral attacks, and pointing out an inconsistency in the police report. When, however, Barnwell stated that his client was not pleading guilty "because of any illegally obtained evidence," Mayweather was conspicuously silent. While we recognize that even a perfect Rule 11 colloquy does not preclude a later plea withdrawal, *see Davis*, 428 F.3d at 806; *Garcia*, 401 F.3d at 1012, it is hardly a mere formality. A district court cannot be expected to accurately assess whether a plea is knowing and voluntary unless the defendant candidly conveys to the court what he knows. Mayweather failed to do that.

**[7]** In *McTiernan*, we repeated—with emphasis—our long-standing interpretation of Rule 11(d)(2)(B) to allow plea withdrawal for any reason "*that did not exist when the defendant entered his plea*." 546 F.3d at 1167 (citing *Davis*, 428 F.3d at 805). We have never held that the rule also embraces circumstances known to a defendant at the time of the guilty plea, and we decline to do so now. Thus, we conclude that Mayweather's decision at his plea proceeding not to bring to the district court's attention his alleged instruction to Barnwell to challenge the validity of the search of his apartment precludes him from establishing a fair and just reason for withdrawing his plea.

## B.   Sentencing Exposure

**[8]** Mayweather's second proffered reason—that Barnwell erroneously advised him that he would face a maximum sentence of 60 months' imprisonment if he pleaded guilty—requires little discussion. Even assuming that to be the case, the plea agreement correctly recited that 60 months was the statutory *minimum* and that the statutory *maximum* was life.

Whatever doubts Mayweather may have harbored had to have been dispelled when, at the district court's request, the government announced the same minimum and maximum at the plea proceeding. We therefore agree with the district court that Mayweather's claim that he pleaded guilty under a mistaken belief as to his sentencing exposure is "demonstrably false."

## III

**[9]** As for Mayweather's claim that Barnwell provided ineffective assistance, we review challenges to the effectiveness of counsel on direct appeal only "(1) where the record on appeal is sufficiently developed to permit determination of the issue, or (2) where the legal representation is so inadequate [based on the existing record] that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Benford*, 574 F.3d 1228, 1231 (9th Cir. 2009) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1156 (9th Cir. 2005)). Neither circumstance is present here.

**[10]** Mayweather's claim of ineffective assistance obviously overlaps with his proffered reasons for withdrawing his guilty plea. However, we have held only that Mayweather's knowledge of those reasons at the time of his plea precludes plea withdrawal. The record is not developed as to what advice Barnwell gave Mayweather, why Barnwell did not file a suppression motion, and what would have happened had he done so. As a result, we cannot meaningfully assess "what counsel did, why it was done, and what, if any, prejudice resulted." *Benford*, 574 F.3d at 1231 (quoting *Jeronimo*, 398 F.3d at 1156). Therefore, we decline Mayweather's invitation to review the constitutional adequacy of Barnwell's representation, without prejudice to his right—explicitly preserved in his plea agreement—to seek collateral relief under 28 U.S.C. § 2255.

**AFFIRMED.**