**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

      v.

JOSE HERNANDEZ BONILLA, Jr.,
           *Defendant-Appellant.*

No. 09-10307

D.C. No.
5:07-cr-00251-
RMW-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted
October 8, 2010—San Francisco, California

Filed March 11, 2011

Before: Stephen Reinhardt and Marsha S. Berzon,
Circuit Judges, and Louis H. Pollak, Senior District Judge.*

Opinion by Judge Reinhardt

---

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

## COUNSEL

Amber Sax Rosen, Assistant U.S. Attorney, for the plaintiff-appellee.

Robert E. Carey, Jr., Palo Alto, California, for the defendant-appellant.

## OPINION

REINHARDT, Circuit Judge:

Jose Hernandez Bonilla, Jr. appeals the district court's denial of his pre-sentencing motion to withdraw his guilty plea. Bonilla pled guilty to possession of an unregistered firearm and to being a felon in possession of a firearm. He has been a lawful permanent resident of the United States for over thirty years; his wife and two children are all U.S. citizens. When shortly after he had entered his plea Bonilla was for the first time informed that he would be deported on the basis of his plea, he moved to withdraw it, asserting that he would not have pled had he known about the immigration consequences. We hold that the district court's denial of Bonilla's motion to withdraw his plea was an abuse of its discretion.

## I.  BACKGROUND

### A.  Factual Background

The defendant, Bonilla, was born in Mexico in 1973 and was brought to the United States three years later. Thirty years afterward, he was indicted when police in Watsonville, California, responding to a gang altercation, observed a sawed-off shotgun in the front seat of a nearby, unoccupied car. The car belonged to Bonilla, who had previously been convicted of a felony.[1] His fingerprints were found on the

---

[1]The only light that the record sheds on his earlier offense comes from the affidavit of an officer who stated that "[o]n March 15, 2007, I ran a

gun, which was not registered to him. A federal grand jury returned a two count indictment charging Bonilla with possessing an unregistered firearm under 18 U.S.C. § 922(g)(1), and with being a felon in possession of a firearm under 26 U.S.C. § 5861(d).

After Bonilla's indictment, his wife, who, due to his mental health condition, sometimes speaks on his behalf, contacted an investigator at the Federal Public Defender's Office to ask whether it was possible that Bonilla could be deported in connection with his indictment. The investigator told Bonilla's wife only to contact his attorney. When she asked his lawyer at an early court appearance whether it was possible that Bonilla could be deported if he pled guilty, the attorney told her that she would look into the matter but never did, and failed to provide any information about immigration consequences to Bonilla or his wife prior to the plea hearing. At the Rule 11 colloquy, Bonilla admitted that he knew that he possessed the firearm and that it was not registered to him. He did not ask any questions of the court, and entered a plea of guilty as to both counts of the indictment without any plea agreement.

After Bonilla entered the guilty pleas, his wife again asked his lawyer about the immigration consequences of his plea. This time, his lawyer said that she would provide an answer after talking with an immigration specialist. Several days later, she told Bonilla's wife over the phone that as a result of his guilty plea, Bonilla would be deported after serving his sentence. Indeed, a conviction under either of the counts to which he pled would have constituted an aggravated felony,

criminal history search on Jose Hernandez Bonilla and learned that on January 14, 1992, Bonilla was convicted in Santa Cruz County of California Penal Code Section 23, Accessory. This conviction is a felony." Nothing in the record or in Section 23 indicates the nature of this offense. Bonilla would have been 19 at the time.

rendering his deportation presumptively mandatory, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), and conviction of an aggravated felony precludes a non-citizen permanent resident like Bonilla from seeking relief from deportation. *See id.* § 1229b(a)(3). Bonilla's lawyer explained that she had mistakenly believed, at the time he pled, that he was a United States citizen. Shortly thereafter, Bonilla's lawyer declared a conflict of interest in representing him in his ineffective assistance appeal; new counsel was appointed that day.

Bonilla filed a motion to withdraw his plea six months before sentencing was to take place. He contended that his entry of the plea was not knowing or voluntary because he had not understood that pleading guilty would in all likelihood subject him to deportation. "I understood that no one ever indicated that I would be deported, although no one had answered my wife's questions," Bonilla declared in an affidavit in support of the motion. "At the time of the plea of guilty, I believed that I would not be deported because of that plea. . . . Had I known that I would be deported as a result of my plea of guilty, I would never ha[ve] entered that plea to these charges; instead, I would have either sought a different type of plea (which would not result in my necessarily being deported) or, alternatively, I would have gone to trial."

## B.   Procedural Background

The district court denied Bonilla's motion to withdraw his plea. It relied on Ninth Circuit authority in effect at the time, which held that attorneys were not required to advise clients about immigration consequences of a plea because deportation was simply a "collateral consequence" of the plea. *See United States v. Amador-Leal*, 276 F.3d 511, 514-15 (9th Cir. 2002). The court reasoned that because Bonilla had stated in his declaration that he was aware that his wife had asked his attorney whether pleading guilty might affect his immigration status, and because he had not brought that issue to the court's

attention during the plea colloquy, he "was at least aware of the possibility of deportation."

The district court noted that the issue whether the failure to advise an immigrant defendant of the deportation consequences of a possible plea constitutes ineffective assistance of counsel was at that time pending before the Supreme Court in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). The court nonetheless concluded that Bonilla had not received ineffective assistance because even if *Padilla* were retroactively to render the performance of Bonilla's counsel deficient for Sixth Amendment purposes, *see Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review"), counsel's failure to advise Bonilla did not give rise to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Specifically, the court found that Bonilla's willingness to enter a plea without having received an answer to his wife's question demonstrated that he was not adversely affected by his counsel's failure to inform him about whether pleading guilty carried a risk of deportation. Finding that the failure to receive proper advice from his counsel about the immigration consequences of pleading guilty did not prejudice his decision, the district court denied Bonilla's motion to withdraw his plea. *Id.*

The district court sentenced Bonilla to a period of twenty-four months imprisonment on each count, with the sentences to run concurrently. Bonilla appeals the district court's denial of his motion to withdraw his plea.

## II.   ANALYSIS

[1] We review for abuse of discretion the district court's denial of Bonilla's motion to withdraw his plea in accordance with the "fair and just reason" standard for withdrawal under

Federal Rule of Criminal Procedure 11(d)(2)(B). As we have recently explained, the " 'fair and just' standard is generous and must be applied liberally." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). A defendant who moves to withdraw a guilty plea before a sentence is imposed is not required to show that he would not have pled, but only that the proper legal advice of which he was deprived "could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty . . . ." *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005). A presentence motion to withdraw a plea should be freely allowed if a defendant can show a "fair and just reason" for requesting the withdrawal. *See United States v. Davis*, 428 F.3d 802, 808 (9th Cir. 2005). "Erroneous or inadequate legal advice may . . . constitute a fair and just reason for plea withdrawal." *McTiernan*, 546 F.3d at 1167. Here, the reason Bonilla gave for withdrawal of the plea was "inadequate legal advice" concerning the immigration consequences of his guilty plea.

**[2]** Addressing the responsibility of criminal defense counsel to advise clients about immigration consequences, *Padilla* held, first, that because of the "unique nature of deportation" and "recent changes in our immigration law [that] have made removal nearly an automatic result for a broad class of noncitizen offenders," "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." 130 S. Ct. at 1481-82. Next, *Padilla* defined the scope of a criminal defense attorney's duty to advise his noncitizen client about the immigration consequences of a guilty plea:

> When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* at 1483 (footnote omitted). *Padilla* then expressly rejected the notion that *Strickland* guarantees apply only to the active furnishing of erroneous advice about immigration consequences of a plea. Instead, the Court extended the right to counsel to protect against the passive *omission* of correct advice about the possibility of deportation:

> A holding limited to affirmative misadvice would invite two absurd results. First, it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement." *Libretti v. United States*, 516 U.S. 29, 50-51 (1995). When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all.[ ] Second, it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available. It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so "clearly satisfies the first prong of the *Strickland* analysis."

*Id.* at 1484 (footnote and second citation omitted).

**[3]** The Government does not dispute that given *Padilla*, Bonilla received "inadequate legal advice" about the immigration consequences of his plea. *McTiernan*, 546 F.3d at 1167. Indeed, Bonilla received *no* advice about immigration consequences before entering his plea, only learning afterward that pleading guilty would almost certainly result in deportation. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *id.* § 1101(a)(43)(E)(ii) (making a

conviction under, *inter alia*, 18 U.S.C. § 922(g)(1) an aggravated felony). It bears emphasizing that by entering a plea of guilty without a plea agreement as to both counts of the indictment, Bonilla did not stand to benefit from a plea agreement in a way that might have made the plea an attractive alternative to trial. To the contrary, unknown to Bonilla at the time of his plea hearing, entering a plea would mean that after he served his sentence, he would almost certainly be deported and separated from his wife and children, all three U.S. residents and citizens. A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty. *See Padilla*, 130 S. Ct. at 1483. There can be little doubt that the district court abused its discretion in concluding that, because Bonilla was willing to enter a plea when he "was at least aware of the possibility of deportation," his counsel's failure to advise him that he would almost certainly be deported did not constitute a "fair and just reason" for the withdrawal of his plea. *McTiernan*, 546 F.3d at 1167.

**[4]** Even if Bonilla was aware, when he pled, of the "possibility" that he might incur some risk of deportation by entering a plea, this does not show that he would not have gone to trial rather than plead guilty had he been properly advised that a plea would make his deportation virtually certain. Moreover, it was reasonable for Bonilla to have inferred that he likely would not be deported if he pled, from the fact that his attorney did not prior to his entry of the plea tell his wife about the immigration consequences, despite the fact that she had requested that information. That Bonilla, through his wife, contacted his lawyer and the investigator at the Federal Public Defender's Office to ask whether he could be subject to deportation proceedings in connection with his plea demonstrated that this was a matter of considerable importance to him. Because a reasonable person in Bonilla's position could well have interpreted his lawyer's silence to mean that pleading guilty would not place him in jeopardy of deportation, it

is evident that counsel's failure to advise Bonilla of the immigration consequences "could have at least plausibly motivated" him to plead guilty rather than go to trial. *Garcia*, 401 F.3d at 1012.

Far less plausible is the district court's assumption that Bonilla declined to ask the court about immigration consequences during his Rule 11 colloquy because he would have pled regardless of possible deportation. Neither the fact that Bonilla's wife asked his lawyer whether pleading guilty might have immigration consequences, nor the fact that Bonilla failed at his plea colloquy to ask the judge for advice regarding this possibility, is inconsistent with Bonilla's having believed that he would not be deported if he pled. Indeed, when Bonilla finally learned that by pleading he would in all likelihood be deported, he timely moved to withdraw his plea.

**[5]** The Government relies on our decision in *United States v. Mayweather*, 623 F.3d 762 (9th Cir. 2010) to support its contention that Bonilla's awareness of the possibility that a guilty plea might carry a risk of deportation is enough to show that he does not have "fair and just reason" to withdraw his plea. The Government's reliance on *Mayweather* is misplaced. *Mayweather* holds, in relevant part, that defense counsel's failure to pursue a suppression motion was not fair and just reason for the defendant to withdraw his guilty plea under circumstances in which, "prior to pleading, the defendant was aware of the prospect of making a suppression motion." *Id*. at 769. We reasoned that because Mayweather had "supplied the requisite pre-plea knowledge in his post-plea affidavit" that he could have made a suppression motion, "nothing arguably prevented [him] from raising the suppression issue before the court prior to pleading." *Id*. We found it significant that, although Mayweather participated actively during the Rule 11 proceeding, when defense counsel "stated that his client was not pleading guilty 'because of any illegally obtained evidence,' Mayweather was conspicuously silent." *Id*. We also emphasized that Mayweather had neglected to "candidly con-

vey[ ] to the court what he knows," and so was not entitled to withdraw his plea under the fair and just reason standard. *Id.*

In addition to the fact that Bonilla did not lack candor in his dealings with the court, his case differs in two other decisive respects from Mayweather's. First, there is no evidence that Bonilla, like Mayweather, knew before his plea that the basis on which he would later request withdrawal actually existed. Specifically, Mayweather had pre-plea knowledge regarding the validity of the ground on which he later sought to withdraw his plea. Mayweather stated in his post-plea affidavit that he had "made it very clear to [his lawyer] that [he] wanted to litigate . . . a motion to suppress the January 14, 2008 search of [his] apartment." *Id.*

**[6]** Although Bonilla may have known prior to his plea about the *possibility* that there might be a reason not to plead to the indictment, because of his lawyer's failure to answer his wife's question he did not know whether that possibility was likely to have any real consequences. He learned only after he had pled that the plea would in fact make his deportation virtually certain. Unlike the court in *Mayweather*, we do not find any evidence in this case that the defendant would have still pled rather than have gone to trial had he received the correct advice prior to his plea.

The second critical respect in which Bonilla's case is distinguishable from *Mayweather* relates to the facts surrounding each defendant's failure, during his Rule 11 colloquy, to raise with the court the ground on which he would later seek to withdraw his plea. Mayweather failed to inform the court that he had instructed his lawyer to make a suppression motion even though during his plea hearing the subject of suppression was explicitly addressed by his lawyer. Bonilla's silence, by contrast, came only in response to the court's generalized question, "Do you have any questions before I ask you how you plead?" Neither Bonilla's lawyer nor the judge at Bonilla's plea hearing ever addressed the subject of deportation.

Indeed, Bonilla's lawyer later admitted that at the time of the plea hearing she had mistakenly thought that Bonilla was a citizen, which accounted in part for her less than satisfactory performance in failing to advise Bonilla as to the immigration consequences of his plea.

**[7]** There can be no question that the immigration consequences about which Bonilla learned after entering a plea "could have at least plausibly motivated a reasonable person in [the defendant's] position not to [plead] guilty . . . ." *Garcia*, 401 F.3d at 1011-12. As Bonilla stated in his declaration, he would at the very least have attempted to negotiate a plea to a lesser offense. In any event, if defense counsel's failure to provide material advice "plausibly could have motivated his decision to plead guilty[,] [n]othing in Rule 11(d)(2)(B) requires a defendant to show more in order to satisfy the 'fair and just reason' standard." *Davis*, 428 F.3d at 808. Bonilla met this "fair and just reason" standard for pre-sentence withdrawal of his plea by virtue of his counsel's failure to provide advice upon request, and would have done so even had no such request been made. The district court's failure to grant Bonilla's motion to withdraw his plea constituted a failure to apply the rule generously and liberally and resulted in an abuse of its discretion.

## Conclusion

**[8]** Had Bonilla's lawyer provided him with the advice that his wife requested about possible immigration consequences of his plea, such advice "could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty . . . ." *Garcia*, 401 F.3d at 1011-12. The district court's denial of his motion to withdraw his plea was therefore unreasonable, and constituted an abuse of discretion under the "fair and just reason" standard. *See Davis*, 428 F.3d at 808. We **VACATE** the plea and conviction and **REMAND** for further proceedings consistent with this decision.

**VACATED and REMANDED**.